[Crim. No. 5695. Second Dist., Div. Three. Feb. 27, 1957.]

THE PEOPLE, Respondent, v. LEROY KENNETH BARDIN, Appellant.

Joseph W. Fairfield and Ethelyn F. Black for Appellant.

Edmund G. Brown, Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

SHINN, P. J.—Leroy Kenneth Bardin was charged by information in Count I with bookmaking; in Count II with unlawfully keeping and occupying a store building for the purpose of recording and registering bets on horse races; and in Count III with having recorded and registered a bet or bets on horse races (Pen. Code, § 337a, subds. 1, 2 and 4). Trial was to a jury. Defendant was convicted on all three counts and his motion for a new trial was denied. Bardin was placed on probation for three years and fined $250. He appeals from the judgment (Pen. Code, § 1237) and the order denying him a new trial.

Fredrick L. Smith, a police officer, was the chief witness for the People. The following is the substance of his testimony. Acting on a tip from an anonymous informant, Officer Smith and his partner Officer Kubiak entered an electrical appliance store located at 5980 West Pico Boulevard in Los Angeles shortly after noon on December 15, 1955. As they entered they saw defendant conversing with a female customer. Defendant asked the officers whether he could help them and they replied that they wanted to look at some television sets. Presently a man entered the store, handed defendant a small slip of white paper, which Bardin put in his left-hand pocket, and said: "That's in the first at Los Alamitos." Then the telephone rang and defendant answered the call. Officer Smith heard him say: "Is that in the first? . . . What number?" and saw Bardin making notes on a piece of writing paper on the desk in front of him. After defendant

hung up, he dialed a number and said: "I have one here in the first, Number 9 horse, 20 to win, and I also have one in the first at Los Alamitos, 30 and 20. Do you want to take that, too?" When this conversation was completed the officers identified themselves, placed Bardin under arrest, and made a search of his person and the premises. Officer Smith identified papers found on the premises, including one taken from defendant's pocket. They contained numerous notations such as "30-20-X," "1-9-20XX," "3-1-FG-1XX 12.15" and names such as "Spee Damion," "Crossbow Girl," etc. and certain initials. The witness identified the symbols as the record of bets, the names and initials as those of horses and tracks, and he testified that horses so indicated had run at the tracks and in the races indicated. Also in evidence was a sheet of paper, found under a blotter, with numerous names and figures, followed by a plus or minus sign. This the officer identified as a bookmaker's "owe sheet." Other papers identified as betting markers were found in a wastebasket.

Officer Kubiak testified that he had a conversation with Bardin immediately after the arrest. He asked defendant what he was doing with the pieces of paper which had been recovered from his person and from the top of the desk. Defendant told him that he bet on the horses once in a while and that the notations on the slips represented his own bets. He denied that he was a bookmaker but refused to answer any more questions about his activities on the premises.

Milton Jaffe, testifying in defendant's behalf, stated that he was in the appliance store on business when the officers arrived. He denied passing the slip of paper bearing the notation "Samia Gamal 30-20-X" to defendant.

Defendant, testifying in his own behalf, denied, generally, the testimony of the officers. He did not know what the figures "1-9-20XX" on the large sheet taken from the desk meant and thought that they might refer to the model number of some merchandise. He said the numerals "3-1, 1XX, 12.15" represented a bet he had himself made on a horse. He testified that the figures on the "owe" sheet represented debts which he owed or which were owing to him but that they were unconnected with bets.

The first assignment of error to be considered is that the court erred in allowing Officer Smith to testify, over defendant's objections, to the meaning of the symbols on the papers recovered from defendant's person and from the premises. (Defendant concedes that his claim of the insufficiency of the

evidence is but a restatement of this contention.) In this connection, defendant argues that the symbols were intelligible to the ordinary layman, hence not a proper subject for expert testimony, and that the witness was erroneously permitted to give an opinion as to the ultimate facts in issue. The argument is without merit.

With reference to the sheet of white paper found on top of the desk in the store, defendant asserts that "Even to one totally uninitiated in the science of improving the breed it was obvious that some of the figures therein related to horse racing." He also claims that the list of names followed by plus and minus signs and numerals "did not contain any type of cryptogram nor code requiring interpretation." There is little plausibility to these assertions. Symbols such as we have mentioned do not readily yield their significance to the uninformed reader. ■ The testimony of expert witnesses familiar with the notations and symbols used by persons engaged in the bookmaking trade is admissible for the purpose of interpreting the meaning of the symbols. (Code Civ. Proc., § 1863; *People* v. *Hinkle*, 64 Cal.App. 375, 379 [221 P. 693]; *People* v. *Newman*, 24 Cal.2d 168, 175 [148 P.2d 4, 152 A.L.R. 365].) These considerations apply equally to the document which Officer Smith described as an "owe" sheet. ■ We have no doubt that if a qualified expert may state his opinion that certain written symbols represent wagers on horse races, he may also state his opinion that a list of names and numbers (such as was discovered in the circumstances of the instant case) represents an accounting method used by bookmakers. ■ Defendant also argues that the court should have not permitted Officer Smith to explain the meaning of the symbols until the papers themselves were received in evidence. The papers had been marked for identification, the testimony was foundational, and the papers were ultimately admitted in evidence. There was no error. ■ The next assignment of error to be considered is that the court erred in giving at the People's request the two instructions which we have set out in the margin.[1 & 2] Defendant

---

[1] "If you should find from the evidence that there was an occasion when the defendant, under conditions which fairly afforded him an opportunity to reply, failed to make denial [, or made false, evasive or contradictory statements,] in the face of an accusation, expressed directly to him or made in his presence, charging him with the crime for which he now is on trial or tending to connect him with its commission, and if you should find that he heard the accusation and understood its nature, such [silence] [and] [for] [conduct] on his part may be

asserts that he answered all the questions put to him by the arresting officers, hence the court improperly instructed the jury as to the effect of his silence or evasive response in the face of accusatory statements. This assertion is not borne out by the record. Officer Kubiak stated that after denying he was a bookmaker Bardin refused to answer any more questions. Defendant admitted on direct examination that when the officers asked him whether he was bookmaking on the premises he did not answer the question and did not tell them he was not bookmaking. On cross-examination he stated that he would refuse to reply to a "silly question" and that if he were asked whether he was a bookmaker he would either ignore the question or answer in the negative; he did not remember whether he answered "no" to Officer Kubiak's question. In the light of defendant's evasive replies the instructions were proper. (*People* v. *Willmurth*, 77 Cal.App. 2d 605, 615 [176 P.2d 102].)

The final assignment of error is that the court erred in refusing to give the "two reasonable theories" instruction which was requested by defendant.[3] He argues that since the evidence which tended to establish his guilt was circumstantial, he was entitled to an instruction defining the jury's duties in weighing the reasonable inferences to be drawn from

considered against him as indicating an admission that the accusation thus made was true. Evidence of such an accusatory statement is not received for the purpose of proving its truth, but only to explain the conduct of the accused in the face of it; and unless you should find that his conduct at the time indicated an admission that the accusatory statement was true, you should entirely disregard the statement."

[2] "The law of this state requires that you view with caution any evidence that purports to relate an oral admission of the defendant [or an oral confession by him.]"

[3] "If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

"You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.

"Where the guilt of the defendant is predicated upon circumstantial evidence, the character of the evidence must not only be consistent with the hypothesis of guilt but inconsistent with any rational hypothesis of innocence."

that evidence, and the court's failure to so instruct the jury was prejudicial error, citing *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8], *People* v. *Goldstein,* 139 Cal.App.2d 146 [293 P.2d 495], *People* v. *Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1].

The instruction requested by defendant is proper only when the prosecution relies either wholly or substantially upon circumstantial evidence. (*People* v. *Thompson,* 147 Cal.App.2d 543, 547-548 [305 P.2d 274].) The attorney general concedes that the testimony of Officer Smith in explanation of the papers found on Bardin's person and on the premises was circumstantial (see *People* v. *Goldstein, supra,* 139 Cal.App.2d 146, 153-154), and admits that as to Count II (occupying a store for the purpose of registering bets) the instruction should have been given. As to Count I (bookmaking) and Count III (recording and registering bets) it is argued that the evidence of guilt was direct, hence no instruction need have been given with respect to those counts. The attorney general also argues that the court's failure to give the requested instruction was not prejudicial error and that no miscarriage of justice resulted. We agree with this latter contention.

The question is whether it is improbable that the jury would have reached the same result had the instructions been given. (*People* v. *Goldstein, supra,* 139 Cal.App.2d 146, 156.)

We are of the opinion that the evidence of guilt was so strong as to admit of no reasonable belief in defendant's innocence. The officers witnessed a betting transaction between Bardin and another man in the store; they overheard telephone conversations in which Bardin relayed wagers; they recovered papers in defendant's handwriting which contained lists of bets and an accounting system kept by defendant with respect to horse race wagers. Defendant's denials and explanations of the evidence against him were implausible; his replies to the officers' questions were evasive. Refusal to give the instruction was not reversible error.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied March 13, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1957.