[Crim. No. 6324. Second Dist., Div. Three. Dec. 4, 1958.]

THE PEOPLE, Respondent, v. ROBERT ARTHUR GIBSON, Appellant.

Manuel Valenzuela and Julius Weled for Appellant.

Edmund G. Brown, Attorney General, and John M. Huntington, Deputy Attorney General, for Respondent.

SHINN, P. J.—Robert Arthur Gibson was charged by information in Count I with burglary; in Count II with assault with intent to commit rape; and in Count III with burglary. It was also alleged that Gibson had suffered a prior conviction of forgery. Defendant pleaded not guilty and admitted the former conviction. Trial was to a jury. Gibson acted as his own attorney. The jury found him guilty as charged in the information; it determined the offense alleged in Count I to be burglary of the first degree and the offense alleged in Count III to be second degree burglary. Defendant's motion for new trial was denied. Probation was likewise denied, and defendant was sentenced to state prison. Gibson appeals from the judgment.

The convictions were based upon evidence of the following facts. Zella Mae Boothby, a 62-year-old divorcee, lived by herself on the first floor of an apartment building on Linden Avenue in Long Beach. At about 1 a.m. on September 21, 1957, Mrs. Boothby returned home by taxicab from a friend's house. She noticed a light cream-colored station wagon with a green top parked in front of the apartment building. Mrs. Boothby entered her apartment, prepared for bed and went into the kitchen to get a drink of water. As she was about to turn on the light, she looked up and saw an intruder, who seized her, put his hand over her mouth and held her with her back toward him. Mrs. Boothby identified Gibson as the intruder. She testified that he was wearing dark pants and a dark jacket with a zipper on it; there was no alcohol on his breath. She attempted to escape but defendant told her to do what he said or she would be hurt. Gibson asked her if she had any valuables and she gave him a ring and $5.00 from her purse. Defendant then told her to disrobe. Mrs. Boothby complied and sat down on the bed. Gibson exposed himself and told her to submit to him. He raised his arm and said: "I will give you three counts to make up your mind." Just then a car drove up and someone entered the apartment house, slamming the front door. Mrs. Boothby cried out: "That is my husband, I know," whereupon defendant left her apartment by the front door. Mrs. Boothby ran out the

back door and down the side of the building to her landlady's apartment. As she did so, she saw the station wagon drive away at a high rate of speed.

Police officers called to the scene found that a screen had been removed from Mrs. Boothby's kitchen window and placed on the ground nearby; there was a new "L" shaped slit in the bottom of the screen. Officer Lawrence Harvey, a qualified fingerprint expert, examined the area and discovered latent fingerprints on a tile sill inside the window; the impressions had been made by the last finger-joints of someone reaching in from the outside. Officer Harvey removed the impressions from the window sill. He testified that he had compared photographic enlargements of the impressions found at the scene with a set of fingerprints taken from defendant at the city jail; there were 12 points of similarity between them. In the officer's opinion, the two sets of prints were made by the same person. The photographs and defendant's fingerprint card were received in evidence.

Zella Christensen lived by herself in the front apartment of a one-story court on Chestnut Avenue in Long Beach. On the morning of March 25, 1957, Mrs. Christensen retired at about 1 a.m. She arose at about 2:30 a.m., then returned to bed, leaving the light on. Mrs. Christensen testified that she awoke between 4:30 and 5 a.m. and saw a tall, thin man with dark hair and a fair complexion standing beside her bed. After a moment, the man left. She then discovered that $51 was missing from a wallet in her purse. Mrs. Christensen could not identify Gibson as the intruder.

Police officers called to the scene found that the screen in one of Mrs. Christensen's windows had been slit. Officer Wallace Dillon, a qualified fingerprint expert, examined the area and discovered a fresh latent partial palm print on the window sill pointing in and a fresh set of latent fingerprints on the frame of the screen. Officer Dillon removed the impressions. He testified that he had compared photographic enlargements of the impressions with a palm print and fingerprints taken from defendant. In his opinion, the impressions found at the scene were made by Gibson. The photographic enlargements were likewise received in evidence.

Officers Sullens and McMahon had a conversation with defendant while the latter was in custody. When questioned by the officers Gibson denied his guilt of burglary and denied assaulting Mrs. Boothby. When asked to explain the presence

of his fingerprints on the window sill, Gibson told the officers that he had been drinking at a bar on the night of the burglary. A man whose name he could not remember suggested that defendant drive him to his house to get some money. Upon arriving at the apartment building on Linden Avenue, the man told Gibson he had lost his keys and asked defendant to climb through the kitchen window and unlock the front door, which Gibson did. Defendant returned to his car and waited for his companion. When he saw an elderly woman hurrying out of the apartment he realized "something was up" and drove off. Upon being asked by Officer Sullens what kind of car he was driving on September 21st, Gibson said he was driving a two-toned Ford station wagon; to the officer's best recollection, defendant said that the colors were either blue-green and cream or light blue and cream.

Gibson testified in his own behalf that he did not commit the offenses charged in the information. He spent the evening of September 20th drinking at several bars in Long Beach with a man named Field. During an altercation at the Towne House bar he got blood on his hands and on his jacket. Gibson admitted telling the officers that he entered the Boothby apartment but he denied having broken into it. He gave no explanation of the presence of his fingerprints and palm prints beside Mrs. Christensen's window. On cross-examination, he admitted a prior felony conviction.

Mark Field, called as a defense witness, corroborated Gibson's testimony as to his whereabouts on the night of September 20th. He testified that after the fight at the Towne House, Gibson drove him to another bar and then departed. A jacket that defendant claimed he was wearing on September 20th was introduced in evidence. Gibson's wife testified that she did not know whether her husband was wearing it on that night.

At defendant's request the court obtained a qualified fingerprint expert to assist him in his defense; the expert was not called as a witness at the trial.

The sole assignment of error on the appeal is that the deputy district attorney was guilty of prejudicial misconduct.

As we have said, Gibson acted as his own attorney. During his cross-examination of Officer Sullens, Gibson asked the officer whether he had told him (defendant) that he knew him to be guilty of at least 20 burglaries in Long Beach and that if he (Gibson) admitted his guilt of the Boothby burglary

he would not be prosecuted for the other offenses. The question was apparently asked in an effort to prove that the statements made by Gibson to the investigating officers were elicited by means of promises of immunity. Sullens replied that he made no offer of immunity, but that he told Gibson he knew he was guilty of the other burglaries and that the district attorney would probably file only a few charges against him.

On the redirect examination of Officer Sullens, the following occurred: "Q. Did this defendant ever make a confession? A. No he never did make the confession. Q. *Were you telling the truth when you told him about other counts?* A. *Yes, I was telling the truth.* Q. *Is there anything unusual from your long experience in handling matters involving crimes for the District Attorney to select certain counts?* A. *Nothing unusual about it whatsoever.*" (Emphasis ours.) No objection was interposed by Gibson to this series of questions.

We have no doubt that the testimony of Officer Sullens was inadmissible and that the deputy was guilty of misconduct. Our question is not whether the testimony was harmful to the defense; we are certain that it was. The question is whether the misconduct was of so serious a nature as to have resulted in convictions which otherwise, in all probability, would not have occurred. (*People* v. *Watson,* 46 Cal.2d 818, 836 [*299* P.2d 243].) If we had any doubt as to the correct answer, we would resolve the doubt in Gibson's favor.

■ Our conclusion is that the conduct of the deputy did not result in a miscarriage of justice. With respect to the offenses against Mrs. Boothby, the fingerprint evidence firmly established that Gibson had broken into the apartment through the kitchen window, if the police expert was to be believed. There was also the testimony of Mrs. Boothby that defendant was the man who assaulted her and took her ring and money. When questioned by the officers, Gibson admitted entering the apartment but he testified at the trial that he did not break into it. With respect to the burglary of Mrs. Christensen's apartment, the fingerprint evidence clearly established Gibson's presence at the scene. The fact that Mrs. Christensen was unable to identify defendant as the burglar was a circumstance to be weighed against Gibson's failure to explain the presence of his fingerprints or to introduce evidence as to his whereabouts during the early morning of March 25th. We are of the opinion that under the evidence and the legitimate

inferences the question of Gibson's guilt of the three offenses was not a close one, and we are not persuaded that if the questioning of Officer Sullens had not occurred, the verdict would have been different as to any of the three counts.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.