[Crim. No. 6338.    Second Dist., Div. Two.    Sept. 28, 1959.]

THE PEOPLE, Respondent, v. RICHARD KOLB et al., Defendants; OSCAR REYES, Appellant.

Paul Augustine, Jr., under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

HERNDON, J.—By an indictment appellant Oscar Reyes and his codefendant Richard Kolb were charged with a violation of section 11500, Health and Safety Code, in that they did "sell, furnish and give away a preparation of heroin." Appellant at first denied, but later admitted, the charge of a prior conviction for a violation of the same statute. Kolb entered a plea of guilty. Appellant was found guilty after a jury trial and was sentenced to state prison.

Appealing from the judgment and sentence Reyes contends: (1) that the district attorney was guilty of prejudicial misconduct in asking a prosecution witness to point out appellant's codefendant who was present in the courtroom; (2) that the evidence is insufficient to sustain the conviction; (3) that the trial court erred in failing to instruct the jury on circumstantial evidence, and (4) that the trial court failed to rule on defendant's motion for new trial.

Reviewing the evidence according to the familiar rule (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), the record reveals the following. On the afternoon of July 12, 1957, police officers Valdez and Manrique, assigned to the Los Angeles police narcotics division, were driving along Temple Street, between Beaudry and Boylston Streets in Los Angeles. Observing Kolb motioning to them, the officers drove up to the curb where Kolb was standing in front of an establishment called the New Carioca Café. After a discussion with the officers, Kolb went into the café and shortly thereafter returned with appellant Reyes.

Kolb and Reyes got into the rear seat of the officers' car. The officers sat in front, Valdez driving. After telling the driver to "move on," Reyes directed him to a location on Boylston Street about one-half block south of Temple. At that point Reyes told the officer to stop the car. Reyes thereupon got out of the car and walked over to a retaining wall which was about 8 feet distant from the curb. The wall was 5 or 6 feet in height.

Upon arriving at the wall, Reyes reached over it with his arm and hand and then immediately returned to the car and got into the front seat with the officers. He closed the door, directed Valdez to drive on and turned and handed some object to Kolb. The testimony of both officers described the movements of Reyes in substantially the same way. In the words of Officer Valdez: "Oscar Reyes got out of the car and walked up to the wall and reached over it and grabbed—

reached over it and then returned back to the car and handed something to Dickie Kolb. At that time I looked back and I saw Dickie Kolb was holding a yellow balloon in his hand.''

Both officers testified that instantly after Reyes handed the object to Kolb they observed the yellow balloon in Kolb's hand. Kolb removed five capsules from the balloon and handed them to Officer Manrique in exchange for $20 in currency. After the officer had driven a short distance, Reyes said, ''Stop here . . . I will get off here.'' After Reyes' departure, the officers took Kolb back to the café. They then took the capsules to the central narcotics bureau where a chemist determined that the powder contained therein was heroin.

Appellant testified that he met Kolb in the Carioca Café and that Kolb told him he was going for a ride. ''I told him that if he [Kolb] wouldn't mind dropping me off on top of Boylston, I would see if I could get ahold of Paul, the fellow that was supposed to pick me up.'' Kolb indicated his assent and, according to appellant, they proceeded with Valdez and Manrique to the place designated by appellant where appellant left the car, walked about 25 feet to a 4-foot wall, called out for Paul, and receiving no response from Paul, got back into the car; after proceeding a few blocks appellant asked to be let out. The officers testified in rebuttal that Reyes did not call out for Paul or make any such gesture.

The contention that the evidence is not sufficient to sustain the conviction requires but little discussion. Accepting the officers' version of the transaction, as the jury did and as we must, the conclusion that appellant handed the contraband to Kolb is well-nigh inescapable. The entire course of conduct of the parties, as described by the prosecuting witnesses, is susceptible of only one rational interpretation: the four men proceeded to the place designated by appellant for a well-understood purpose; appellant knew that something was hidden on or about the top of the retaining wall; he went to the retaining wall to get the hidden object and handed it to Kolb; he saw Kolb pass it on to the officer in exchange for currency; that he knew the nature of the commodity is clearly indicated by the unusual character of the selected hiding place and by the peculiar and furtive aspects of the procedure followed in the procurement and sale. As stated in appellant's supplemental brief: ''It is conceded by Appellant that in order to be guilty of the offense charged it is not necessary that he

participated in a sale, for it is sufficient for guilt under the statute if he were to furnish or give away heroin, which completely eliminates the necessity of the People showing any money or other consideration moving to Appellant.''

Early in his direct testimony, Officer Valdez described the manner in which Kolb went into the café as follows: ''Q. Did you notice where he went? A. He went into the New Carioca Cafe. Q. Did he return later? A. Yes; he did. Q. Was there someone with him when he returned? A. Yes, there was. Q. Do you see that person in the courtroom? A. Yes, I do. Q. Will you point that person out? A. Yes; Mr. Oscar Reyes (indicating). Q. The defendant in this case? A. Yes, sir. Q. By the way, do you see Richard Kolb in the courtroom? A. Yes, I do. Q. Will you point him out, please. A. In back of Reyes (indicating). Q. The gentleman sitting back, next to the bailiff's desk? A. Yes, sir.''

■ Although there was neither objection, assignment of misconduct, motion for mistrial nor request for admonition or instruction, appellant now contends that the actions of the deputy district attorney in having the witness identify Kolb constituted prejudicial misconduct in that the effect of it was to challenge appellant to call Kolb as a witness. We regard the contention as unmeritorious. It seems most questionable whether the action complained of would probably have had the suggested effect. We find nothing in the record to suggest that the prosecuting officer was motivated by any improper purpose in following the rather natural procedure of asking the witness to identify the persons alluded to in his testimony. It does not appear that Kolb was brought to the courtroom at the instance of the prosecution or indeed that he was in custody at the time.

■ However, assuming *arguendo* that there was impropriety, appellant's failure to object or to assign misconduct at the time of the occurrence renders the assignment unavailable here. (*People* v. *Gist*, 28 Cal.App.2d 287, 292 [82 P.2d 501]; *People* v. *Johnson*, 163 Cal.App.2d 58, 62 [328 P.2d 809].) *People* v. *Robarge*, 111 Cal.App.2d 87 [244 P.2d 407], relied upon by appellant, presented a very different factual situation; the case is clearly distinguishable. In *Robarge* a man in custody whose name had the same pronunciation as the defendant's, and who had been positively identified as a participant in the robbery with which the defendant was charged, was brought into the courtroom at the instance of the prosecution. Evidently the sole purpose of this procedure was to

give the jury the impression that defendant and this other man were brothers and thereby to bolster a weak and uncertain identification of the defendant as a participant in the robbery. In the case at bar appellant's own testimony confirmed the fact that both Kolb and the appellant were present in the officers' car at the time of the alleged transaction.

In contending that the trial court erred in failing to give, on its own motion, instructions on circumstantial evidence, appellant seeks to invoke the well-settled rule that where a conviction must rest substantially on circumstantial evidence, it is necessary for the court to instruct the jury to the effect that the proven facts and circumstances must not only be entirely consistent with the theory of guilt but also must be inconsistent with any other rational conclusion. (*People* v. *Yrigoyen*, 45 Cal.2d 46, 49 [286 P.2d 1]; *People* v. *Bender*, 27 Cal.2d 164, 175 [163 P.2d 8]; *People* v. *Barkoff*, 163 Cal. App.2d 639, 643 [329 P.2d 1005].)

Respondent argues that the rule has no application in the case at bar for the reason that all of the incriminating evidence was direct and not circumstantial. It consisted entirely of the officers' testimony relating (1) their personal observations of appellant's actions, and (2) the words spoken by appellant in the course of the transaction. It is persuasively argued that the fact of appellant's handing the contraband to Kolb was proved by direct evidence in that the officers observed appellant hand an object to Kolb who instantaneously thereafter produced the capsules containing heroin.

We conclude, however, that any assumed error in failing to give the instructions on circumstantial evidence was nonprejudicial. The only facts which possibly might be regarded as having been established inferentially are (1) that the object which the officers saw Reyes hand to Kolb was the balloon containing the contraband, and (2) that appellant knew the nature of the substance which he was handling. Defendant denied handing anything to Kolb. If the jury had believed appellant's version of the facts an acquittal would have been an obvious necessity. But it is apparent that the jury believed the testimony of the officers. And if the jury accepted as true the *direct* evidence (the testimony of the officers concerning the things they saw and heard) then the inference of appellant's knowing participation was inescapable.

"[T]he fact that instructions on circumstantial evi-

108

dence were not given is prejudicial only when it is improbable that the jury would have reached the same result had the instructions been given." (*People* v. *Contreras*, 167 Cal. App.2d 288, 289-290 [334 P.2d 208] ; *People* v. *Goldstein*, 139 Cal.App.2d 146, 156 [293 P.2d 495] ; *People* v. *Bardin*, 148 Cal.App.2d 776, 781 [307 P.2d 384] ; *People* v. *Candiotto*, 128 Cal.App.2d 347, 358 [275 P.2d 500].) In *People* v. *Ely*, 170 Cal.App.2d 301, 302 [338 P.2d 483], the criminal intent of the defendant was proved only by inference from his physical acts. The appellate court commented that the instruction on circumstantial evidence should have been given, but, after commenting upon the direct evidence of defendant's actions, held: "The jury, accepting the direct evidence that these acts were performed, could not question their motivation. Thus there was no prejudice. (*People* v. *Norton*, 141 Cal. App.2d 790, 794 [297 P.2d 439] ; *People* v. *Andrus*, 159 Cal. App.2d 673, 684 [324 P.2d 617].) "

As stated in *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243] : ". . . a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." Applying the foregoing test to the record before us, we are of the opinion that it is not reasonably probable that a result more favorable to the appellant would have been reached in the absence of the error of which complaint is here made. If we entertained any doubt on the subject we would be constrained to give appellant the benefit of it. (*People* v. *Campbell*, 162 Cal.App.2d 776, 787-788 [329 P.2d 82] ; *People* v. *Gibson*, 165 Cal.App.2d 685, 689 [332 P.2d 113].)

There is no merit whatsoever in appellant's contention that the trial court failed to rule on his motion for a new trial. While the reporter's transcript does not reflect the disposition of the motion, the clerk's transcript definitely indicates that the motion was denied. Moreover, by consent of the parties the record was augmented by inclusion of certain affidavits of counsel. These affidavits state that the motion was denied. Finally, the instant record shows that at the time of judgment appellant's counsel affirmatively stated that there was no legal cause why sentence should not then be pronounced.

The judgment is affirmed and the nugatory appeal from the sentence is dismissed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied October 21, 1959, and appellant's petition for a hearing by the Supreme Court was denied November 25, 1959.