[Civ. No. 6975.  Fourth Dist.  May 9, 1963.]

Estate of JOHN RUTLEDGE LARENDON, Deceased. JAMES A. PETRIE et al., Plaintiffs and Respondents, v. RUTH P. GONYNOR, Defendant.

Kaminar, Sorbo, Andreen, Thorn & Gallagher and Robert E. Andreen for Defendant and Appellant.

Beck & Klitgaard, James S. Marinos, T. Bruce Smith and Newlin, Tackabury & Johnston for Plaintiffs and Respondents.

BROWN (G.), J.—This is an appeal by proponent and appellant, Ruth P. Gonynor, of the will of John Rutledge Larendon, deceased, from a judgment denying probate thereof. The case was tried without a jury; judgment was entered following findings of fact that Larendon lacked testamentary

capacity and was unduly influenced by one Robert Dalton at the time he executed the will.

Appellant contends the findings of undue influence and mental incompetency are not substantiated by the evidence. Aside from a point of evidence which we shall consider later, if the court's findings can be supported on either ground the judgment must be sustained. (*Estate of Kirk*, 161 Cal.App.2d 145 [326 P.2d 151].) The two grounds, however, may be related, i.e., a person who is mentally incompetent may be more susceptible to undue influence, or less able than a normal person to resist it.

The evidence of undue influence appears to amply support the judgment, and we shall address ourselves, therefore, to that issue.

Testator was 86 years of age when he was murdered by Robert Dalton on December 7, 1960. (*People* v. *Dalton*, 201 Cal.App.2d 396 [20 Cal.Rptr. 51].) The last will was dated May 31, 1960; it left the entire estate to Dalton; in the event Dalton predeceased testator one-half of the estate was left to Dalton's step-sister Ruth P. Gonynor, the proponent and appellant herein, and the other half to Nathan Bullock who was a recent homosexual associate of Dalton and a person who was disliked by Larendon.

Larendon lived most of his life in New York City. He was of thrifty, frugal, conservative, Scotch ancestry. He never married and at the time of his death there were no surviving close relatives.

Robert Dalton commenced working for Larendon about 1948 as a companion and nurse. Dalton had no property or money at that time; he continued to live with and care for Larendon until the time of his death.

Larendon executed several wills in his lifetime, many of the originals of which remain in existence. The substance of these wills is as follows: A September 12, 1938, will left the estate to a brother and sister. A May 6, 1949, will left everything to the brother. The March 4, 1952, will left the estate to his brother if living, and otherwise to respondents James A. Petrie, James A. Petrie, Jr., Leslie Petrie Lippincott and Katherine Leslie Scott. An August 6, 1953, will left everything to the brother, if living, and otherwise to testator's attorney, respondent David R. Blossom, and Robert Dalton. It may be noted that Blossom prepared all of the testator's wills except the 1938 will and the will with which we are concerned herein, that of May 31, 1960. A will of July 8,

1955, left the major portion of Larendon's estate to Dalton, with respondent Henry Kendall to receive $10,000. Kendall was hired as companion and nurse in the Larendon household from 1948 to 1959 when he was driven away by Dalton.

The June 23, 1959, will left all of Larendon's property to Dalton if he survived, otherwise to Kendall and Gonynor. When this will was drawn, Larendon executed two trust instruments by which most of his estate was transferred to the trusts. One of the trusts was irrevocable; on its termination the principal was to be paid to Larendon, if living, otherwise to a person appointed by him in his last will. This power of appointment was never exercised. The trust provided that if the power of appointment was not exercised and Larendon died, the principal was to be paid to Dalton, if living, and otherwise to Kendall and Gonynor equally.

The second trust executed at the same time in 1959 was revocable; by its terms the income went to Larendon and on Larendon's death $35,000 was to go to Kendall and the balance to Dalton. This trust was revoked by Larendon on May 25, 1960.

In the years which passed after Dalton came to the Larendon household, Dalton enlarged his mastery over Larendon's person and finances. Starting about 1953 Dalton subjected Larendon to brutal beatings culminating in the one which took his life; he slapped Larendon and threatened him; Dalton's conduct toward Larendon was vulgar and abusive. In 1959 Dalton threw articles at Larendon, shoving him about; during that year Larendon moved from New York to La Jolla, California; Dalton presented completed checks except for signature to Larendon and forced him to sign them as maker; in the months of July, August and September 1960 he struck Larendon and called him a vegetable; Dalton assured Larendon and Larendon believed him, that Dalton was the only person in the world who would care for him and if he were to leave him, there would be no one to take care of him; in 1960 Dalton telephoned Larendon from San Francisco and threatened not to return; Larendon cried in despair over the possibility that Dalton would not come back, and he would be left alone in the world; all of this was at a time when Larendon's estate was still ample to easily hire sufficient care of his person.

At this time, while Dalton appears to have been paid $600 a month for his services, two of his bank accounts indicate that slightly less than $600,000 passed through the accounts

from December 1959 to December 1960, the funds coming from Larendon.

Dalton completely dominated and regulated Larendon's life, permitting him to do or not to do such small things as leave a chair. Larendon never retaliated to the assaults upon him by Dalton and was almost child-like in his reactions, cowering and cringing after the beatings. Nor did Larendon respond in any manner when Dalton threatened to kill him, stating: ''I can kill you, you old bastard, and nobody will find out about it or care about it.'' On one occasion, Dalton was talking to Larendon about selling stocks; Larendon objected to the sale because the stocks were making money; Dalton said, ''I am running things now. You will do what I tell you.'' Larendon obeyed Dalton's orders without question and he resented any criticism of Dalton by others.

Kendall, who is mentioned above as a contingent beneficiary under the 1959 will, fell from Dalton's favor in November 1959 when Dalton chased him around the La Jolla house with a knife. About this time Dalton became involved in his strange relationship with Bullock, and although Larendon did not like Bullock, nevertheless, Bullock was named a contingent beneficiary under the last will. That will, which is the subject of this litigation, was executed on May 31, 1960 in the law offices of F. Tudor Scripps, Jr., of La Jolla, California. Scripps first met Larendon in early May 1960 when Larendon and Dalton came to his office for the purpose of revoking the two trusts which had been created in 1959. Scripps took the matter under advisement and a week later when Larendon and Dalton returned Scripps told Larendon that the larger trust was revocable and that he would write to a New York lawyer concerning the possibility of terminating the other trust. On May 25, 1960, Larendon went to Scripps' office and executed a revocation of the larger trust. At this time Larendon discussed with Scripps the making of a will and Scripps asked questions concerning the content of the estate; Scripps made rough notes of the conversation, listing a house and its contents worth $180,000, jewelry of $80,000 and three Chrysler automobiles, all of which Larendon thought he owned, but which were, in fact, under the ownership of Dalton or male friends on whom Dalton lavished his affections. Neither Larendon nor Dalton drove automobiles.

Dalton arranged for the appointments of Larendon with Attorney Scripps. Between July 1960 and September 1960 Larendon borrowed $377,000 and gave the entire sums to Dal-

ton, all of this in the face of the fact that Larendon's financial dealings in his earlier years had been on a frugal and conservative basis. In his later years, however, certainly from 1957 onward he was extravagant in the quantities of monies which he gave to Dalton or Dalton extracted from him.

The trial court found there was a confidential and fiduciary relationship between Larendon and Dalton and concluded, on the facts, that the last will was executed by reason of undue influence on the part of Dalton, as well as a lack of testamentary capacity on the part of Larendon at the time of its execution.

It is not within the province of this court to determine whether undue influence was exercised by Dalton upon the testator. That question was one of fact decided by the trial court. The province of a reviewing court in a will contest is identical to its position in any other civil action. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the judgment if possible. When two or more inferences can be reasonably deduced from the facts, the reviewing court lacks power to substitute its deductions for those of the trial judge. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Estate of Kirk*, 161 Cal.App.2d 145, 150 [326 P.2d 151]; *Estate of Bourquin*, 161 Cal.App.2d 289, 297 [326 P.2d 604].)

In considering whether undue influence was exercised by Dalton on Larendon in the execution of his last will, proof of the facts with respect thereto is not limited to the actual time the will is executed; instead, facts bearing upon such undue influence, both before and after the execution of the will are admissible so long as they tend to show such influence at the time the will was executed. (*Estate of Kirk*, *supra*, 161 Cal.App.2d 145, 150.) It was proper, therefore, for the court in the instant case to consider facts bearing upon undue influence, both before and after Larendon executed his last will on May 31, 1960.

The five indicia of undue influence are:

"(1) The provisions of the will were unnatural ... ; (2) the dispositions of the will were at variance with the intentions of the decedent, expressed both before and after its execution; (3) the relations existing between the chief beneficiaries and the decedent afforded to the former an opportunity to control the testamentary act; (4) the decedent's mental and physical condition was such as to permit a subversion of his freedom of will; and (5) the chief beneficiaries under the

will were active in procuring the instrument to be executed.'' (*Estate of Lingenfelter,* 38 Cal.2d 571, 585 [241 P.2d 990].)

■ '' 'Proof, to establish undue influence, must be had of a pressure which overpowers the mind and bears down the volition of the testator at the time the will is made. ■ It consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating upon it.' '' (*Estate of Moore,* 143 Cal.App.2d 64, 71 [300 P.2d 110].)

■ Under the facts and circumstances here shown we cannot say as a matter of law that the finding of undue influence is not supported by substantial evidence. This conclusion makes it unnecessary for us to consider the contention of appellant that the evidence did not support a lack of testamentary capacity on the part of Larendon.

■ There remains the final contention of appellant that the court erred in permitting the introduction into evidence of out of court statements of Dalton, these statements being hearsay.

In oral argument appellant's counsel stated that he objected to the whole line of evidence of Dalton's out of court statements. The record, however, does not support the appellant with respect to this contention. The court admitted the statements as to Dalton but denied their admission with respect to the other parties. Appellant made no objection to the ruling of the court at the time, and in fact concurred with the court that the statements were admissible as to Dalton. By failing to object at the time the appellant waived any right to object to this testimony. (*Perry* v. *McLaughlin,* 212 Cal. 1, 6 [297 P. 554] ; *People* v. *Kolb,* 174 Cal.App.2d 102, 106 [344 P.2d 316].)

Judgment affirmed.

Griffin, P. J., and Coughlin, J., concurred.