119 Cal.Rptr.2d 597 (2002)
98 Cal.App.4th 205
The PEOPLE, Plaintiff and Respondent,
v.
Guadalupe TORRES, Defendant and Appellant.
No. C035827.
Court of Appeal, Third District.
May 7, 2002.
Review Granted July 17, 2002.
*598 Howard J. Stechel, Los Angeles, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Clayton S. Tanaka and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SIMS, Acting P.J.
Appellant Guadalupe Torres appeals from an order after jury trial extending his commitment under the Sexually Violent Predators Act (SVPA). (Welf. & Inst. Code, § 6600 et seq.)[1] He contends: (1) The trial court erred prejudicially by failing to instruct the jury that to find that appellant met the criteria for recommitment, it must find that he was likely to engage in sexually violent predatory criminal behavior; furthermore, trial counsel *599 provided ineffective assistance by failing to request this instruction or to object to the instruction given. (2) The trial court erred prejudicially by failing to inquire into and respond to a jury question during deliberations; furthermore, trial counsel provided ineffective assistance by failing to request on the record that the court do so. (3) The trial court erred prejudicially by refusing the prosecutor's request to instruct the jury on circumstantial evidence with CALJIC No. 2.01 under the SVPA; furthermore, trial counsel provided ineffective assistance by failing to join the prosecutor's request for the instruction. (4) The trial court erred prejudicially by admitting, over objection, a report submitted in appellant's original commitment proceeding by a psychologist who did not testify in this proceeding. (5) The trial court erred prejudicially by permitting an expert witness, over objection, to read aloud a 30-year-old affidavit by appellant's sister accusing him of an uncharged sexual offense.
In the published portion of the opinion, we conclude that, assuming the trial court erred in failing to instruct the jury that defendant's future sexually violent criminal behavior had to be predatory, any error was harmless beyond a reasonable doubt on this record. We also conclude the trial court erred in refusing a request to instruct with CALJIC No. 2.01 on circumstantial evidence, but the error is harmless.
In the unpublished portion of the opinion, we reject defendant's other claims of prejudicial error. We shall therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
In December 1997, appellant was committed to Atascadero State Hospital (ASH) for two years as a sexually violent predator (SVP). (The California Supreme Court affirmed appellant's commitment in People v. Torres (2001) 25 Cal.4th 680, 106 Cal. Rptr.2d 824, 22 P.3d 871.)
On October 12, 1999, the People filed a petition in Yolo County Superior Court to extend appellant's commitment under section 6604.[2] After a hearing, the trial court determined that there was probable cause to believe appellant remained an SVP.
The matter went to jury trial on May 9, 2000. On May 17, 2000, the jury returned a verdict that appellant was an SVP. The trial court thereafter ordered appellant's commitment extended for a two-year period commencing on December 13, 1999.
At trial, a psychologist, Dr. Robert Owen, and a psychiatrist, Dr. Gabrielle Paladino, both experienced in SVPA evaluations, testified for the People. The People also called appellant as an adverse witness. Appellant called no witnesses.
Both expert witnesses opined that appellant met all the criteria for an SVP finding under section 6600.[3] Dr. Owen, who had *600 not interviewed appellant because appellant declined to be interviewed, based his opinion on the court and hospital records in appellant's case and on two recidivism assessment tests, the RRASOR (a test generally used in SVPA cases) and a newer test called Static 99. Dr. Paladino, a staff psychiatrist in the SVP program at ASH who has treated appellant since his commitment, based her opinion on her personal knowledge of appellant as well as on the materials used by Dr. Owen.
Dr. Owen testified that appellant has been convicted of three sexually violent offenses: sodomy on a 13-year-old boy in Texas in 1970, forcible rape of a 49-year-old woman in Texas in 1976, and forcible rape of an adult woman in Yolo County, California, in 1989. He opined that appellant suffers from paraphilia, alcohol dependence, and an antisocial personality disorder, diagnosed mental disorders which make him a danger to others. He also opined, based on appellant's criminal history, evaluations by other mental health professionals, and the results of the RRASOR and the Static 99, that appellant falls into the highest risk category for recidivism.[4]
Dr. Paladino testified that since appellant arrived at ASH in 1998, he had participated only in the introductory phase of ASH's SVP treatment program, which consists of going to classes and hearing lectures, not "active treatment." He had refused to move on to the second phase, in which patients must talk to therapists about their histories and emotional problems. His attorney had advised him not to do so, but in any event he did not feel he needed treatment. Even in his phase one classes, he had been generally hostile and defiant. On the other hand, he had completed an alcoholism treatment program at ASH. He was willing to face his alcohol problem, but not his sexual problem.
Dr. Paladino agreed with Dr. Owen's opinion as to appellant's mental disorders, although she considers him polysubstance-dependent, not simply alcohol-dependent.[5] She also agreed with Dr. Owen's interpretation of the RRASOR and Static 99 tests, noting that appellant's score on the latter was the highest she had ever seen. In her view, it was not a question of whether appellant would reoffend if released now, but only a question of when.
Called under Evidence Code section 776, appellant admitted his prior offenses and said he felt bad about them. However, he believed that he did not need treatment and that he could be safely released at this time. All his crimes were committed under the influence of alcohol or drugs and he had taken steps to address that problem. He also understood that he could be sent to prison for a long time if he committed any new offense.

DISCUSSION

I
The trial court instructed the jury with a modified version of CALJIC No. 4.19 (1998 *601 rev.) which read in part: "The term `sexually violent predator' means a person who, (1) has been convicted of a sexually violent predatory offense against two or more victims for which he received a sentence, and (2) has a currently diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior." (Italics added.)
Appellant contends the last clause of this instruction was legally insufficient because it did not ask the jury to find that appellant is likely to engage in sexually violent predatory criminal behavior, as he believes section 6600, subdivision (a), requires. He further contends trial counsel was ineffective in failing to request this modification or to object to the instruction for not including it.
This issue is now under review by our Supreme Court. (People v. Hurtado (1999) 73 Cal.App.4th 1243, 88 Cal.Rptr.2d 389, review granted October 20, 1999 (S082112).) In this case, we need not resolve the issue because, even assuming the trial court erred by misinstructing the jury, the error was harmless on this record. (See People v. Molina (2000) 82 Cal. App.4th 1329, 98 Cal.Rptr.2d 869.)
Defendant contends we must find the error harmless beyond a reasonable doubt, citing the rule that applies to the failure to instruct on an element of an offense in a criminal case. (Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-711; People v. Flood (1998) 18 Cal.4th 470, 503, 76 Cal.Rptr.2d 180, 957 P.2d 869.)
However, an SVPA commitment proceeding is civil in nature. (Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1171-1177, 81 Cal.Rptr.2d 492, 969 P.2d 584; People v. Hubbart (2001) 88 Cal. App.4th 1202, 1230, 106 Cal.Rptr.2d 490; Leake v. Superior Court (2001) 87 Cal. App.4th 675, 680, 104 Cal.Rptr.2d 767, and authorities cited therein.) The standard of prejudice for the giving of an erroneous instruction in an ordinary civil case is that required by article VI, section 13 of the California Constitution, i.e., whether it seems probable that the error prejudicially affected the verdict. (Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 580, 34 Cal.Rptr.2d 607, 882 P.2d 298; Paterno v. State of California (1999) 74 Cal.App.4th, 68, 106-107, 87 Cal.Rptr.2d 754.)
However, in Conservatorship of Early (1983) 35 Cal.3d 244,197 Cal.Rptr. 539, 673 P.2d 209, our Supreme Court, (adopting ver batim an opinion authored by the late, great Justice Frances Carr of this court) held that the standard of prejudice for the erroneous failure to instruct correctly on the term "gravely disabled" under the Lanterman-Petris-Short-Act (§ 5350 et seq.; hereafter LPS Act), where the proposed conservatee faced involuntary commitment, was whether the error was harmless beyond a reasonable doubt. (Early, supra, at p. 255, 197 Cal.Rptr. 539, 673 P.2d 209.) For this proposition, the Early court cited Conservatorship of Wilson (1982) 137 Cal.App.3d 132 at pages 135-136, 186 Cal.Rptr. 748. (Early, supra, 35 Cal.3d at p. 255, 197 Cal.Rptr. 539, 673 P.2d 209.) Wilson was also a case arising under the LPS Act where the proposed conservatee faced involuntary commitment. After concluding the trial court had given an erroneous jury instruction on the term "gravely disabled," the Wilson court said, "Because a finding of gravely disabled may result in a serious deprivation of personal liberty, the law must `strive to make certain ... only those truly unable to take care of themselves are being assigned conservators under the LPS Act and committed to mental hospitals against their will' [Citation.] The court's error was not harmless beyond a reasonable *602 doubt." (Conservatorship of Wilson, supra, 137 Cal.App.3d at pp. 135-136, 186 Cal.Rptr. 748.)
In this case, appellant faces the same kind of serious deprivation of personal liberty under the SVPA as did the appellants in Early and Wilson. As in Early and Wilson, the jury instruction at issue here involved the very definition of criteria for commitment. The test of prejudice for any error in giving the jury instruction at issue is whether the error is harmless beyond a reasonable doubt. (Conservatorship of Early, supra, 35 Cal.3d 244, 255, 197 Cal.Rptr. 539, 673 P.2d 209; Conservatorship of Wilson, supra, 137 Cal.App.3d 132, 136, 186 Cal.Rptr. 748.)
Measured by this test, any error in failing to instruct the jury that appellant's future violent sexual criminal behavior had to be "predatory" was harmless on this record.
At the outset, we emphasize the jury found, on the instructions given, that appellant would probably engage in sexually violent criminal behavior. The question is whether the sexually violent criminal behavior would be "predatory."
A predatory act under the SVPA is one "directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).) All the sexual offenses of which appellant has been convicted fit this definition. Furthermore, appellant has never had a romantic or long-term sexual relationship and does not want one; thus, any future sexual encounter he might have would doubtless involve strangers or casual acquaintances, as in the past. Finally, he has refused all treatment for his personality disorders other than alcohol dependence. Given these facts, it is not reasonably possible that had the trial court instructed the jury as appellant proposes, it would have found him likely to commit future sexually violent offenses but unlikely to commit predatory offenses. In the words of People v. Flood, supra, 18 Cal.4th 470 at page 505, 76 Cal.Rptr.2d 180, 957 P.2d 869, "in view of the actual verdict returned by the jury in this case there is no reasonable or plausible basis for the finding that the instructional error affected the jury's verdict."
For the most part, appellant's arguments for prejudice do not focus on the precise point at issue. He asserts: (1) not all experts who have assessed him have agreed he suffers from paraphilia (though the only one he mentions who did not so find, Dr. Kim, did not testify as an expert either in this proceeding or in appellant's original commitment proceeding); (2) he has not reoffended sexually, either in or out of custody, since his 1989 offense and his 1993 release from prison; (3) his most recent offense is thus over 10 years old, and the others are 29 and 24 years old respectively; (4) alcohol and drugs were major factors in his prior offenses, but he successfully completed an alcohol treatment program at ASH; (5) the RRASOR and Static 99, on which the experts relied, fail to predict future predatory sexual offenses because they address only future sexual offenses per se; (6) the jury asked for clarification of instructions pertaining to "re-offense criteria [sic ]."
Based on these arguments, appellant concludes the jury might have reached a different outcome if instructed that it had to find he was likely to commit sexually violent predatory offenses. But all appellant's arguments except (5) and (6) go to whether it was reasonably likely he would commit further sexually violent offenses, not to whether his future offenses would *603 be predatory as defined in the SVPA. As we have said, by its verdict the jury determined appellant was likely to commit future sexually violent offenses.
While it is true that the RRASOR and Static 99 tests failed to predict that future sexual offenses would be predatory, they did not predict that they would not be predatory. Rather, they were simply silent on the issue. Thus, they would not contradict the strong inference that, since appellant's criminal sexual conduct has always been predatory, it was likely to be predatory in the future.
The fact that the jury asked for clarification of the jury instruction carries little weight because, as we explain in the unpublished portion of this opinion; the jury likely returned its verdict before the court could give a clarifying instruction. Hence, although the jury may have initially had some sort of problem with the instruction, the problem likely quickly cured itself during deliberations.
Considering the entire record, we see no reasonable possibility the jury would not have found that appellant's future offenses would be predatory, if instructed to decide that question. (See People v. Flood, supra, 18 Cal.4th 470, 505, 76 Cal.Rptr.2d 180, 957 P.2d 869.) Therefore, any instructional error was harmless beyond a reasonable doubt. And because appellant can show no prejudice from the error, we reject his claim that counsel was ineffective for failing to object to the instruction given or to request its modification. (Strickland v. Washington (1984) 466 U.S. 668, 687, 104 S.Ct. 2052, 2056, 80 L.Ed.2d 674, 693; People v. Mendoza (2000) 24 Cal.4th 130, 158-159, 99 Cal.Rptr.2d 485, 6 P.3d 150.)

II[**]

III
The prosecutor requested that the trial court instruct the jury with a modified version of CALJIC No. 2.01 (sufficiency of circumstantial evidence).[6] The trial court refused the instruction. Appellant contends the court erred by doing so and his trial counsel was ineffective in failing to join the prosecutor's request. We agree the trial court erred but conclude the error is harmless on this record.
As appellant correctly points out, CALJIC No. 2.01 should be given upon request, if the circumstances are appropriate, in a civil case such as this one requiring proof beyond a reasonable doubt.[7] *604 (Conservatorship of Walker (1987) 196 Cal. App.3d 1082, 1096, 242 Cal.Rptr. 289; see § 6604.) Appellant argues that, even if his trial attorney did not request the instruction, such a request would have been futile in light of the trial court's rejection of the prosecutor's request for the instruction. The People do not refute this argument, and, indeed, the People make no claim that appellant has waived the issue by any failure of his trial counsel to request the instruction. In the circumstances, we will consider the issue on the merits.[8]
CALJIC No. 2.01 should be given when the prosecution's case is based substantially on circumstantial evidence. (People v. Marquez (1992) 1 Cal.4th 553, 577, 3 Cal.Rptr.2d 710, 822 P.2d 418.) When the case is based mainly on direct evidence, the instruction should not be given. (People v. Anderson (2001) 25 Cal.4th 543, 582, 106 Cal.Rptr.2d 575, 22 P.3d 347.)
Evidence Code section 410 provides: "As used in this chapter, `direct evidence' means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact."
However, the Evidence Code provides no definition of "circumstantial evidence," which is also sometimes called "indirect evidence." (1 Witkin, Cal. Evidence (4th ed.2000), Circumstantial Evidence, § 1, p. 321.) Witkin (ibid.) refers to the definitions of direct and circumstantial evidence set forth in People v. Goldstein (1956) 139 Cal.App.2d 146 at page 152, 293 P.2d 495:
"Direct evidence is that which is applied to the fact to be proved, immediately and directly, and without the aid of any intervening fact or process: as where, on a trial for murder, a witness positively testifies he saw the accused inflict the mortal wound, or administer the poison. Circumstantial evidence is that which is applied to the principal fact, indirectly, or through the medium of other facts, from which the principal fact is inferred. The characteristics of circumstantial evidence, as distinguished from that which is direct, are, first, the existence and presentation of one or more evidentiary facts; and, second, a process of inference, by which these facts are so connected with the fact sought, as to tend to produce a persuasion of its truth. [Citation.] An inference is a conclusion as to the existence of a material fact that a trier of fact may properly draw from the existence of certain primary facts. [Citation.] Inferences drawn from physical facts amount to circumstantial evidence. [Citation.] It has been said that circumstantial evidence, as distinguished from direct evidence, is testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. [Citation.]"
Here, the parties agree that the People's case depended substantially, indeed overwhelmingly, on the opinions of experts. Without citing authority, appellant contends these expert opinions constituted circumstantial evidence. Without citing authority, the People contend the expert opinion testimony constituted direct evidence. Defendant wins this round.
The opinions of experts have, to our knowledge, uniformly been held to constitute circumstantial evidence in California. (See People v. Goldstein, supra, 139 Cal. App.2d 146, 153-154, 293 P.2d 495 [collecting *605 cases]; see also Grinnell v. Charles Pfizer & Co. (1969) 274 Cal.App.2d 424, 435, 79 Cal.Rptr. 369; People v. Di Giacomo (1961) 193 Cal.App.2d 688, 695, 14 Cal. Rptr. 574; People v. Gentry (1968) 257 Cal.App.2d 607, 611, 65 Cal.Rptr. 235.) In particular, in People v. Jones (1954) 42 Cal.2d 219, 266 P.2d 38, our Supreme Court characterized the opinion testimony of a psychiatrist, who was to render an opinion that the defendant was not a sexual deviate, as "indirect evidence." (Id. at p. 222, 266 P.2d 38; see People v. Goldstein, supra, 139 Cal.App.2d at p. 153, 293 P.2d 495.)
Because here the People's case depended substantially on expert opinion testimony that constituted circumstantial evidence, the trial court erred in refusing the request to instruct with CALJIC No. 2.01. (People v. Yrigoyen (1955) 45 Cal.2d 46, 49-50, 286 P.2d 1.)
This leaves the question whether the instructional error is prejudicial.
In a criminal case, the failure to instruct with CALJIC No. 2.01 is prejudicial only when it is probable that the defendant would have obtained a better result had the instruction been given. (See People v. Kolb (1959) 174 Cal.App.2d 102, 108, 344 P.2d 316, and authorities cited therein; see People v. Yrigoyen, supra, 45 Cal.2d 46, 50, 286 P.2d 1 ["miscarriage of justice"]; see Cal. Const, art. VI, § 13; People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.) The standard of harmless error cannot be more favorable to a defendant in a civil case than in a criminal case. Accordingly, we adopt the aforementioned test in this civil case and ask whether it is reasonably probable that appellant would have obtained a better result had the circumstantial evidence instruction been given.
On this record, the failure to give the instruction was not prejudicial. As we have explained, the testifying experts agreed, based on all the criteria relevant to their opinionsappellant's long history of sexually violent predatory conduct, his diagnosed paraphilia and other mental disorders, his resistance to treatment for any disorder aside from alcohol abuse (which he wrongly saw as the sole or main cause of his past acts), and his RRASOR and Static 99 scoresthat appellant was in the very highest risk category for likeliness to reoffend in a sexually violent predatory manner.
Against this overwhelming circumstantial evidence, appellant offered no contrary expert testimony. He testified that he felt remorse for past offenses, was not likely to reoffend because he had dealt with his alcohol problem, did not need any other treatment, and knew he would face a long prison sentence if he reoffended. However, we think it probable the jury would have found the experts' testimony more credible than defendant's even had they been instructed with modified CALJIC No. 2.01, because: appellant had spent many years in custody without reforming; his views on what treatment he needed and did not need revealed a lack of insight into his character; and his success in the hospital's alcoholism program did not prove he could remain alcohol and drugfree out of confinement.
It is not probable defendant would have obtained a better result had the subject instruction been given. (People v. Kolb, supra, 174 Cal.App.2d 102, 108, 344 P.2d 316.)

*606 IV-V[***]

DISPOSITION
The judgment (order extending commitment) is affirmed.
We concur: DAVIS and HULL, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, IV, and V of the DISCUSSION.
[1] All undesignated section references are to the Welfare and Institutions Code.
[2] Section 6604 then provided in part that a person adjudged an SVP "shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment under this article...." Instead of "new petition for commitment," the statute now reads "petition for extended commitment." (Stats.2000, ch. 420, § 3.)
[3] At the time of trial, section 6600, subdivision (a), defined an SVP as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent behavior." Subdivision (a) was subsequently amended, in part, to make offenses committed and punished under the former indeterminate sentencing regime also usable as predicate offenses. (Stats.2000, ch. 643, § 1.)
[4] The RRASOR test uses four variable to predict whether a person is likely to reoffend sexually over a period of 15 years; however, in constructing the test its authors did not follow up released sex offenders to determine their actual recidivism rates. The newer Static 99 test, created by the authors of the RRASOR test, is based on a follow up of 1,200 released sex offenders and permits assessments based on 5-, 10-, and 15-year periods. Both tests assess recidivism for sexual offenses in general, not specifically for sexually violent offenses.
[5] Dr. Paladino acknowledged that Dr. Luke Kim, a psychiatrist who assessed appellant on his release from prison in 1993, did not diagnose him as suffering from paraphilia.
[**] See footnote *, ante.
[6] The proposed instruction read: "A finding respondent comes within Welfare and Institutions Code Section 6600 et[ ] seq. may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the respondent comes within the criteria; but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish respondent comes within the criteria, must be proved beyond a reasonable doubt. [¶] In other words, before an inference essential to establish respondent comes within the criteria may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which such inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to a finding respondent comes within the criteria and the other to a finding respondent does not, you must adopt that interpretation which points to the respondent not coming within the criteria and reject that interpretation which points to him coming within the criteria. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."
[7] Because we deem the prosecutor's request sufficient, we have no occasion to determine whether the instruction must be given sua sponte in an SVPA proceeding.
[8] This effectively disposes of appellant's contention that his trial counsel was ineffective for not requesting the instruction.
[***] See footnote *, ante.