[Civ. No. 24895. Fourth Dist., Div. One. Oct. 29, 1982.]

Conservatorship of the Person of LORI WILSON.
SAN DIEGO COUNTY DEPARTMENT OF PUBLIC WELFARE,
Petitioner and Respondent, v.
LORI WILSON, Objector and Appellant.

COUNSEL

Allen C. Snyder for Objector and Appellant.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Nathan C. Northup, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**BROWN (Gerald), P. J.**—Lori Wilson appeals a judgment and order for conservatorship after a jury found her gravely disabled (Welf & Inst. Code § 5350).

Lori was 23 years old at the time of trial. She had a six-year history of psychiatric problems, and had been hospitalized several times for treatment of her mental illness. Lori's symptoms include sleepless nights, high energy levels, restless wandering, auditory hallucinations, erratic driving, difficulty in communicating, agitation and excitement, and poor judgment.

Beginning in 1975, Lori tried to live independently, although she returned home to live with her father on several occasions. Lori worked as a nurse's aide, a waitress and a bank teller, but only for short periods of time. She also attended college and participated in track and cross-country running. Although prescribed medications control Lori's symptoms, she stopped taking them to begin a program of running and vitamin therapy. However, this therapy was ineffective in preventing the recurrence of Lori's symptoms.

On February 13, 1981, San Diego County Department of Public Welfare (the County) petitioned the superior court to appoint a conservator for Lori. The County alleged Lori needed a conservator because she was gravely disabled by reason of a mental disorder as provided by the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.). Following a hearing, the court found Lori was gravely disabled, and granted the County's petition for conservatorship.

Lori demanded a jury trial under Welfare and Institutions Code section 5350 subdivision (d) on the issue of her grave disability. A unanimous jury found Lori was gravely disabled. The court appointed a conservator, imposed specific disabilities, and ordered Lori placed in a skilled nursing long-term mental facility.

■    Lori contends the trial court erred in giving the County's proposed jury instruction on grave disability: "The term 'gravely disabled' means a condition in which a person, as a result of a mental disorder, is unable, unassisted, to provide on a consistent basis for his or her basic personal needs for food, clothing or shelter. [¶]"In other words, if, as a result of a mental disorder, a person is unable, without the help or assistance of others, to provide for the specific basic personal needs, that person would be gravely disabled within the meaning of the statute." Lori asserts the County's instruction requires the jury to find her gravely disabled unless she is totally self-sufficient. She says the instruction, as

given, allows the jury to find her gravely disabled even though she is able to utilize resources on her own behalf.

In giving the County's proposed instruction, the court too narrowly construed the definition of gravely disabled. "Neither the legislative purposes nor the express words of the LPS statutory enactment . . . require that a nondangerous, mentally disordered person, must . . . survive in society unaided by willing relatives, friends, or appropriate third persons who stand ready to provide such aid, . . ." (*Conservatorship of Davis* (1981) 124 Cal.App.3d 313, 326 [177 Cal.Rptr. 369].) At trial, the court ruled all evidence of Lori's ability to use her family's help was irrelevant. However, "an LPS conservatee subject to involuntary confinement in a mental institution, is entitled to have a unanimous jury determination of all of the questions involved in the imposition of such a conservatorship, and not just on the issue of grave disability in the narrow sense of whether he or she can safely survive in freedom and provide food, clothing or shelter unaided by willing, responsible relatives, friends or appropriate third persons." (*Conservatorship of Davis, supra,* 124 Cal.App.3d 313, 329.) The trial court should have allowed the jury to consider Lori's ability to provide for her personal needs with any available help or encouragement.

Lori further contends the court should have told the jury "gravely disabled" means "a condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter." This is the statutory definition of gravely disabled (Welf. & Inst. Code, § 5008 subdivision (h)). It is "constitutionally precise" and connotes "an inability to care for one's basic personal needs" of food, clothing and shelter (*Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 285 [139 Cal.Rptr. 357]). Lori's proposed instruction properly focuses on whether she can live safely in freedom "with or without the aid of appropriate others" (*Conservatorship of Davis, supra,* 124 Cal.App.3d 313, 326). The trial court should have instructed the jury in the language of the statute.

Lori correctly contends the court's erred in instructing the jury on the meaning of gravely disabled was not harmless beyond a reasonable doubt. At trial, the court used the erroneous definition of gravely disabled in excluding evidence of family assistance to Lori. Lori's father and sister testified Lori could not provide food, clothing and shelter "on her own." Dr. Hansen also testified Lori could not provide for her own food, clothing and shelter "unassisted." The court told the jury, in effect, to find Lori gravely disabled unless she could "provide" necessities by personally supplying food, clothing and shelter. The issue was whether Lori could "provide for" such necessities regardless of the source of aid. Because a finding of gravely disabled may result in a serious deprivation of personal liberty, the law must "strive to make certain . . . only those truly unable to take care of themselves are being assigned

conservators under the LPS Act and committed to mental hospitals against their will." ( *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225 [152 Cal.Rptr. 425, 590 P.2d 1].) The court's error was not harmless beyond a reasonable doubt.

■ The County contends the issue of Lori's grave disability is now moot because the conservatorship automatically terminated on April 7, 1982, one year after the court appointed a conservator. However, when a conservatorship terminates, the conservator may petition the court for reapppointment for a succeeding one-year period (Welf & Inst. Code, § 5361). The record does not indicate whether this was done. Moreover, the issue is not moot, because "collateral consequences remain even after the conservatorship has been terminated." *Conservatorship of Buchanan* (1978) 78 Cal.App.3d 281, 286 [144 Cal.Rptr. 241]; *Baber* v. *Superior Court* (1980) 113 Cal.App.3d 955, 959 [170 Cal.Rptr. 353].)

In civilized society people do not live in a vacuum, completely independent of everyone and everything. We do not literally have "self-made men." Each person is dependent, in varying degrees, on others. No longer do people make their own clothes from fabrics which they themselves weaved from products they grew with their own hands. People do not build their own houses from products they themselves produced. Nor does anyone completely grow his own food. To buy bread is to be dependent in part on someone else to make it. To require Lori to do those things unassisted is too much; and she is not gravely disabled because she cannot do them.

The judgment is reversed.

Cologne, J., and Staniforth, J., concurred.