[No. D004987. Fourth Dist., Div. One. Mar. 24, 1987.]

Conservatorship of the Person of MERRITT NEAL.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
MERRITT NEAL, Objector and Appellant.

COUNSEL

Sharron Voorhees, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace and Mark C. Mead, Deputy County Counsel, for Petitioner and Respondent.

**OPINION**

**WIENER, Acting P. J.**—Merritt Neal appeals the order finding him gravely disabled within the meaning of the Lanterman-Petris-Short Act (Welf. & Inst. Code, §§ 5000-5464) (LPS Act) and establishing a conservatorship for him. The court named his common law wife, Betty Kearney, as his conservator. We reverse.

The LPS Act provides that a conservatorship shall be established when, because of a mental disorder, the proposed conservatee "is unable to provide for his basic personal needs for food, clothing, or shelter." (Welf. & Inst. Code, § 5008, subd. (h)(1).) In Neal's court trial his counsel admitted Neal did not have the ability to take care of himself and he was not contesting the medical diagnosis that Neal suffered from a mental disorder. Instead he argued this was a "Mary Davis case"; because Kearney was willing to take care of Neal the court could not find him gravely disabled within the meaning of the statute.

Counsel's reference to this being a "Mary Davis case" was shorthand for his argument that the facts warranted a ruling consistent with the holding of *Conservatorship of Davis* (1981) 124 Cal.App.3d 313 [177 Cal.Rptr. 369]. (See also *Conservatorship of Early* (1983) 35 Cal.3d 244, 250 [197 Cal.Rptr. 539, 673 P.2d 209].) In *Davis* the court held that a person is not gravely disabled within the meaning of the statute if he can provide his basic needs with the help of third parties. "[A] person is not 'gravely disabled' within the meaning of section 5008, subdivision (h)(1) if he or she is capable of surviving safely in freedom with the help of willing and responsible family members, friends or third parties." (At p. 321.) The *Davis* court also said "[t]his conclusion is required not only by the principles of statutory construction which we have previously reviewed, but is compelled by the constitutional due process clause of the Fourteenth Amendment to the federal Constitution, and by article I, sections 7, subdivision (a) and (16) of the California Constitution." (At p. 323.)

In *Conservatorship of Wilson* (1982) 137 Cal.App.3d 132 [186 Cal.Rptr. 748] this court agreed with *Davis* holding the trial court's failure to instruct the jury that they could consider the help and assistance offered by friends and relatives of the proposed conservatee was reversible error. (At p. 135.)

Admittedly this is a close case. We conclude, however, that in light of established precedent there is an insufficient basis for the trial court's ruling.

Arguably the *Davis* court's discussion and conclusion expanding the statutory definition of "gravely disabled" could be considered as dictum since

there was sufficient evidence to support the jury verdict on another ground. In *Davis* one of the two psychiatrists who testified said Davis was not gravely disabled. Accordingly the jury could have based their decision on that ground without ever considering the offer of assistance from Davis's friends or family. The *Davis* court, however, did not rest its decision on the sufficiency of the evidence. In any event this court in *Wilson* did not attempt to distinguish *Davis* on this ground. We accepted that holding and we are now bound by it. And even if we were inclined to change our minds we could not do so under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] in light of *Conservatorship of Early, supra,* 35 Cal.3d 244 which expressly agreed with the holdings in *Wilson* and *Davis,* disapproving the contrary holding in *Conservatorship of Buchanan* (1978) 78 Cal.App.3d 281 [144 Cal.Rptr. 241] (*Early,* 35 Cal.3d at p. 255).

We reject the county counsel's efforts to distinguish *Davis* on factual grounds. Counsel claims that neither psychiatrist in *Davis* testified there was a probability that Davis would not take her medication. We disagree. Just as in the case before us, the psychiatrist who opined Davis was gravely disabled felt that although Davis was sincere in saying she would continue to take her medication at home he "had grave doubts as to whether she would be able to continue 'to feel that way.'" (124 Cal.App.3d at p. 318.)

■ We are also unable to affirm the trial court's ruling on the basis that Kearney apparently acquiesced in being named as Neal's conservator. The court said "[t]he proposal this morning is to give you the legal status of a conservator who would make decisions for . . . [Neal]. Do you think that is undesirable for some reason?. . ." Ms. Kearney: "No, I don't, because I don't know the ramifications of what it would bring if I were or weren't, so I can't answer that." Kearney's expressed willingness "to take on the legal responsibility if . . . she were asked to" is irrelevant to the legal issue of whether Neal was gravely disabled at the time of the hearing. Moreover there is no merit to the county counsel's implied premise that naming Kearney as conservator is harmless error in light of her willingness to serve informally. There is a substantial difference between functioning freely without the entanglement of the legal process and a finding of grave disability which subjects the conservatee to "greater control of his or her life than one convicted of a crime." (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 228 [152 Cal.Rptr. 425, 590 P.2d 1].) The stigma of a civil commitment can be as socially debilitating as that of a criminal conviction. (*Id.* at p. 229.)

■ In the case before us the court's ruling was tied to its legitimate concern that lacking a conservatorship and the legal powers accompanying that status Kearney would be powerless to deal with the likely medical events which would necessitate someone having the requisite authority to furnish hospitals or doctors power to act. The court said, "I do not think it is possible

for the court to ignore grave and continuing medical problems and I think it would be inhuman and inappropriate to give Ms. Kearney the moral responsibility which she's happy to assume without giving her the legal power to make important decisions as they arise from time to time. [¶] . . . I don't think the *Mary Davis* case implied the court should be blind to medical realities."

As laudable as the court's motives are and as sympathetic as we may be to its ruling, the record establishes that Kearney was willing to assist Neal in reference to his medical needs. The only physician who testified said that he had no doubt that Kearney was an able, willing and qualified person to take care of Neal either directly or through another person for the entire 24 hours of the day. When the doctor was asked as to Neal's present need to receive medication for his medical disorder he testified ". . . there really isn't a medication for his disorder, and I do not really expect it to make any dramatic change. I think the best medicine for Mr. Neal is to stay away from alcohol—and time."

*Conservatorship of Murphy* (1982) 134 Cal.App.3d 15 [184 Cal.Rptr. 363] addressed a similar issue and concluded the pivotal issue in a conservatorship proceeding was whether the proposed conservatee was "presently" gravely disabled and not whether there was a likelihood of grave disability in the future. (*Id.* at pp. 17-19.) It is clear here that at the time of the conservatorship hearing Neal could function with Kearney's assistance. Even though it might be sensible for Neal to have the benefits of a conservatorship so that Kearney as the conservator could take appropriate action when and if the situation were to arise, the statutory system does not permit the establishment of a conservatorship lacking evidence of *present* disability.

As our opinion suggests we are not totally comfortable with the result which we reach since the trial court's common sense observation has considerable merit. It does indeed place an unfair burden on a friend to take care of one who is gravely disabled where that friend does not have the accompanying legal authority to take essential action. In effect the present state of the law seems to require that trial judges must use blinders to overlook the reality of the need for a conservatorship in those cases where a proposed conservatee's precarious medical condition will in all likelihood require the appointment of a conservator. Nonetheless as pointed out in the *Conservatorship of Benevenuto* (1986) 180 Cal.App.3d 1030 [226 Cal.Rptr. 33], a conservatorship cannot be established because of a perceived likelihood of future relapse. To do so could deprive the liberty of persons who will not suffer such a relapse solely because of the pessimistic statistical odds. Because of the promptness with which a conservatorship proceeding can be invoked the cost in economic and liberty terms is unwarranted. (*Id.* at p. 1034, fn. 2.)

DISPOSITION

Order reversed.

Work, J., concurred.

**BUTLER, J.**—I respectfully dissent. The majority views *Conservatorship of Davis* (1981) 124 Cal.App.3d 313 [177 Cal.Rptr. 369] as holding the availability of willing family, friends or third parties to assist a gravely disabled person provide for his or her basic needs outweighs evidence of the person's mental disability in determining whether a conservatorship should be established under the Lanterman-Petris-Short Act (LPS Act). I disagree with this interpretation. I read *Conservatorship of Early* (1983) 35 Cal.3d 244 [197 Cal.Rptr. 539, 673 P.2d 209] as stating the proper rule of law: "We determine only that evidence of available assistance by family members or friends which will enable one suffering from a mental disorder to meet his or her basic needs for food, clothing and shelter is admissible and that proffered instructions on this issue when tendered by the evidence must be given." (*Early, supra,* at p. 249.)

Here, an experienced trial judge considered evidence of willing third party assistance and concluded substantial evidence demonstrated Merritt Neal is "gravely disabled." The substantial evidence standard of review compels affirmance of establishment of the conservatorship. Nothing in this record suggests need for a Monday morning quarterback approach to evidentiary review.

At the court trial, a psychiatrist, Dr. Rosenthal, testified he found Neal to be gravely disabled as the result of Neal's head injury, his previous deep depression and alcoholism. In addition, Neal's attorney conceded his client was seriously mentally disabled. No evidence was presented disputing Dr. Rosenthal's psychiatric report. Dr. Rosenthal also testified recent changes in Neal's condition suggested a less restrictive placement would be suitable even though he originally recommended Neal be placed in a closed (i.e., locked) psychiatric facility. Dr. Rosenthal discussed the possibility Betty Kearney might care for Neal in her home, even though Neal would require 24-hour care and supervision which Kearney could not provide alone. Kearney told the court she was prepared to bring in additional assistance so someone would be with Neal 24 hours a day. In the end, the court ruled: "I do not think it is possible for the court to ignore grave and continuing medical problems, and I think it would be inhuman and inappropriate to give Ms. Kearney the moral responsibility which she's happy to assume without giving her the legal power to make important decisions as they arise from time to time."

Upon a finding by judge or jury the proposed conservatee is "gravely disabled" as provided by Welfare and Institutions Code,[1] section 5008, subdivision (h)(1), the trial court may appoint a conservator and order the conservatee placed in the least restrictive alternative placement capable of providing the recommended treatment. (§ 5358, subd. (a).) The act explicitly directs placing the conservatee in "his or her own home or the home of a relative" or, failing that, in "the least restrictive residential placement available and necessary to achieve the purposes of treatment" located as close as possible to the conservatee's home or the home of a relative. (§ 5358, subd. (c).) The obvious impact of this provision is to promote placement of LPS conservatees within the family setting whenever the prescribed treatment can be accomplished in the home.

The general rule in construing statutory language is to give effect, whenever possible, to each and every provision. (See *People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].) Thus, contrary to the majority's conclusion, the availability of third party assistance and the establishment of a conservatorship are not mutually exclusive alternatives. The Legislature clearly contemplated circumstances where the LPS conservatee's family or friends would act as primary care providers.

In sharp contrast to the least restrictive alternative placement standard, the court is also authorized to appoint public conservators empowered to involuntarily commit conservatees to locked mental health facilities. (§ 5358, subd. (a).) Because LPS conservatees may be subject to such serious deprivations of liberty, strict due process safeguards are imposed on LPS proceedings. (See *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 227-228 [152 Cal.Rptr. 425, 590 P.2d 1]; *Conservatorship of Davis, supra,* 124 Cal.App.3d 313 at pp. 323-324.)

This case highlights the tension between the moral and legal issues raised by governmental intervention in the care of nondangerous mentally disabled persons. Courts must balance the loss of personal liberty against the state's parental interest in assisting persons incapacitated by reason of mental disability. Most LPS cases pit the proposed conservatee's continued freedom against involuntary commitment under a public conservatorship. Those cases rightly emphasize the protection of fundamental liberty interests.

Nevertheless, not all petitions for LPS conservatorships risk loss of personal freedom. Conservatorships established with the intention of ordering the person into the least restrictive residential placements, as here, do not trigger the same compelling concern for personal freedom associated with the risk of involuntary institutional confinement. Here, the majority

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

extrapolates case law promulgated in the context of constitutional due process rights in a case not presenting such issues. Our sensitivity to the factual setting of each case will accomplish the LPS Act's purpose of providing "individualized treatment, supervision, and placement" (§ 5350.1) for seriously mentally disabled persons.

The majority cites cases for LPS propositions of law which I read as statements concerning jury instructions and burden of proof. In *Conservatorship of Davis, supra,* 124 Cal.App.3d 313, a public conservator sought to establish an LPS conservatorship with power to involuntarily commit a 39-year-old woman. At the jury hearing, one psychiatrist testified Davis was a chronic paranoid schizophrenic unable to provide herself with food, clothing and shelter; a second psychiatrist opined she was mentally ill, but not "gravely disabled." In addition, Davis's husband testified he was willing to have his wife remain at home regardless of her mental problems. (*Davis, supra,* at pp. 317-318.) After the jury found Davis was not gravely disabled, the public conservator appealed, contending the trial court committed instructional error.

The court instructed the jury before they could consider whether Davis was mentally disabled, they must find she, as a result of a mental disorder, was unwilling or unable to accept treatment for that disorder on a voluntary basis. However, if the jury found Davis capable of understanding her need for treatment and for commitment to a plan for treatment, the court instructed she was entitled to a verdict of not gravely disabled. The court next instructed if the jury found Davis capable of surviving safely in freedom by herself or with the help of family and friends, the jury should find her not gravely disabled. Holding the challenged instructions proper, the court undertook an extensive review of LPS requirements and the evidence presented the jury, remarking the trier of fact must consider investigation, evaluation and recommendations. "We accordingly hold that a person sought to be made an LPS conservatee subject to involuntary confinement in a mental institution, is entitled to have a unanimous jury determination of all of the questions involved in the imposition of such a conservatorship, *and not just on the issue of grave disability in the narrow sense of whether he or she can safely survive in freedom and provide food, clothing or shelter unaided by willing, responsible relatives, friends or appropriate third persons.*" (*Conservatorship of Davis, supra,* 124 Cal.App.3d 313 at p. 329, italics added.)

Contrary to the inference in the majority opinion, *Davis* holds the trier of fact must consider all of the questions involved in a conservatorship and not the narrow issue of availability of survival in the bosom of a family.

In *Conservatorship of Wilson* (1982) 137 Cal.App.3d 132 [186 Cal.Rptr. 748], a jury found a 23-year-old woman with a six-year history of psychiatric

problems and hospitalization for mental illness was gravely disabled after she stopped taking medication previously effective in controlling her symptoms. She lived alone and worked intermittently. Neither family nor friends were involved in her care. The trial court established a public conservatorship and ordered her placed in a mental facility. On appeal, we reversed for instructional error: "[Wilson] contends the trial court erred in giving the County's proposed jury instruction on grave disability: 'The term "gravely disabled" means a condition in which a person, as a result of a mental disorder, is unable, unassisted, to provide on a consistent basis for his or her basic personal needs for food, clothing or shelter. [¶] 'In other words, if, as a result of a mental disorder, a person is unable, without the help or assistance of others, to provide for the specific basic personal needs, that person would be gravely disabled within the meaning of the statute.' [Wilson] asserts the County's instruction requires the jury to find her gravely disabled unless she is totally self-sufficient. She says the instruction, as given, allows the jury to find her gravely disabled even though she is able to utilize resources on her own behalf." (*Conservatorship of Wilson, supra,* 137 Cal.App.3d at pp. 134-135.)

Holding the instruction too narrowly construed the definition of gravely disabled, we noted the trial court excluded as irrelevant all evidence of ability of family assistance. *Wilson* does not exclude an LPS conservatorship of a person adjudicated as gravely disabled where family or friends are willing and able to assist.

*Conservatorship of Early, supra,* 35 Cal.3d 244 does not compel a conclusion the availability of family assistance excludes a person from an LPS conservatorship. There, the trial court refused to admit evidence of the availability of the help of family and friends to assist the proposed conservatee in meeting his basic needs and refused to instruct the jury must consider availability of such help. Reversing, the court said: "In the absence of evidence that third party assistance *might* be available, allowing speculation as to that availability by the trier of fact to defeat a finding of grave disability would contravene the purposes of the LPS Act in this context.... Rather, we hold only that the trier of fact on the issue of grave disability must consider the availability of third party assistance to meet the basic needs of the proposed conservatee for food, clothing or shelter only if credible evidence of such assistance is adduced from any source at the trial of the issue. If the fact-finder is a jury, it must be so instructed under these circumstances if so requested by the proposed conservatee." (*Conservatorship of Early, supra,* at p. 254, original italics.)

Thus, the cases on which the majority relies articulate the evidentiary rule a proposed conservatee subject to involuntary institutional commitment is entitled to have the factfinder consider evidence of willing and responsible

third party assistance in determining whether the person is gravely disabled. It is this rule we must adhere to under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]. Accordingly, where the record reflects the finder of fact considered all of the relevant evidence, as here, and concluded the conservatee was gravely disabled, the judgment is tested under the substantial evidence rule on appeal. (*Conservatorship of Murphy* (1982) 134 Cal.App.3d 15, 18 [184 Cal.Rptr. 363]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

The record here, taken in its entirety, shows substantial evidence supporting the court's finding Neal is gravely disabled pursuant to the LPS Act. The trial judge was both finder of fact and applier of law. This circumstance alone distinguishes Neal's case from the third party assistance cases the majority asserts are controlling. The trial court had before it evidence of Neal's mental condition and Kearney's willingness to undertake the care Neal requires. However, the court apparently was not convinced Kearney's proffered aid outweighed the uncontested evidence Neal is gravely disabled.

In addition, Neal clearly was not subject to the risk of involuntary commitment as a result of establishing a private conservatorship administered by his longtime friend and common law wife. Dr. Rosenthal's modified recommendation opened the door for the court to exercise its power to order the conservatee placed in the least restrictive alternative placement, which it did in accordance with the legislative intent expressed in section 5358, subdivision (a). We must presume a trial court sitting as factfinder was fully aware of its obligations; the judgment supported by substantial evidence must be affirmed. (See *People* v. *Johnson, supra,* 26 Cal.3d 557 at pp. 576-577.)

Finally, the majority suggests the trial court may have improperly established Neal's conservatorship as a safety measure in the event Neal suffers a future relapse. Substantial evidence of Neal's present mental infirmity warrants issuance of letters of conservatorship. It follows that consideration of future utility derived from Neal's conservatorship is simply a restatement of the need to place Neal in a conservatorship.

I would affirm the judgment.