Filed 9/8/14; part. pub. order 9/18/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>RUDY FRANCISCO DE LA ROSA,<br><br>      Defendant and Appellant. | C073061<br><br>(Super. Ct. No. CM035627) |

Defendant Rudy Francisco De La Rosa appeals from an order committing him to the trial competency program at Napa State Hospital pursuant to Penal Code[1] section 1370.[2] He contends insufficient evidence supports the finding that he was not

---

[1] Undesignated statutory references are to the Penal Code.

[2] The commitment order is appealable. (*People v. Fields* (1965) 62 Cal.2d 538, 540-541; *People v. Christiana* (2010) 190 Cal.App.4th 1040, 1045-1046.)

1

competent to stand trial. He also contends that after the court decided his placement at Napa State Hospital, the trial court erred in denying him an opportunity to be heard.

While defendant's appeal was pending in this court, defense appellate counsel advised this court that on April 2, 2013, the trial court terminated defendant's commitment, finding that defendant had been restored to competency, and reinstated criminal proceedings. Defendant then entered a plea and the court granted probation.

Relying solely upon *People v. Lindsey* (1971) 20 Cal.App.3d 742, the People argue the issues have been rendered moot due to defendant's restoration to competency and the resumption of criminal proceedings during which defendant entered a plea and was granted probation. Defendant disagrees the issues are moot, arguing that the People have ignored post-*Lindsey* cases discussing the continuing stigma of a wrongful commitment.

FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with possession of marijuana for sale and had served two prior prison terms. He was also charged with misdemeanor possession.

On April 10, 2012, defense counsel stated: "[A]t this time I'm going to express a doubt as to [defendant]'s mental condition. I'm asking the Court to have him examined-- [¶] . . . [¶] . . . based on 1368 and/or 1369." Prior to the hearing, defense counsel had spoken to defendant and said "he was in custody the last time I talked to him" but had been released. Based on defense counsel's expression of doubt, the court suspended criminal proceedings and appointed Paul R. Wuehler, Ph.D. "to assist the Court."

On June 5, 2012, the parties submitted on Dr. Wuehler's report. Dr. Wuehler had reviewed the police report, the charge sheet, the order for examination, and the "[e]xaminer's own previous report on this defendant dated November 16, 2006."

During his interview with defendant, Dr. Wuehler was unable to obtain a complete background from defendant because his responses were "rather minimal, sometimes almost empty" and "rather scatter[ed], and occasionally confused." Defendant answered

2

questions about his childhood, family, marital status, and education history. When asked whether he had any learning problems, "defendant hesitated and finally simply stated: 'I think when I got divorced that was the end of my intelligence days.' " He intended to return to school but if convicted of sales, he had to wait for a couple of years. After his divorce, he became depressed, started drinking, and when drinking became too expensive, he started using marijuana. He was dishonorably discharged from the military because of his drinking. He planned to obtain a medical marijuana recommendation based on the hardware in his ankle which he broke in a "slip and fall." He denied use of any substances other than marijuana.

Dr. Wuehler asked defendant about his mental health history. Defendant claimed, " 'When I get stressed out is when I hear voices.' " "When asked if he has ever been hospitalized for mental health reasons, the defendant stated that he was in 'Napa . . . 2007.' The defendant stated he was there for '. . . incompetent.' " Dr. Wuehler noted that the hospitalization occurred after he had seen defendant and determined that he was "unable to function adequately in his court case at the time." Defendant claimed he had been diagnosed with schizophrenia and claimed it had been " 'alcohol induced.' " Dr. Wuehler noted that alcohol could exacerbate a mental illness but was unlikely to cause it. Defendant claimed he had been an outpatient at Butte County Behavior Health. He was not on SSI or SSD, explaining he was " 'trying to work through' " his mental health issues. He had been homeless several times and " 'go[es] camping.' "

Dr. Wuehler described defendant's responses as "poor/minimal" and "scattered," noting that "[o]ften it appeared the defendant was not registering what this examiner was saying/asking, but was rather paying attention to some internal stimuli" or "voices" and that several times defendant said, " 'I feel like somebody else asked me that question.' " When asked, defendant stated that he heard voices and saw things others did not and that during the interview he had heard voices but did not explain further. Dr. Wuehler described defendant's thought process as "very disordered," "poorly organized,"

3

"tangential and confused." Defendant exhibited "psychotic symptoms," "loose associations," and "paranoid thought," stating "there was 'stuff missing' at his house" and that "everywhere 'you gotta look out for thieves.' " Dr. Wuehler described defendant's affective display as "blunted or flat," displaying a "serious mood." Defendant denied mood swings, claiming " '[m]ost of the time [he] feel[s] depressed' " but then added that he " 'fe[lt] love in [his] life . . .' " without elaborating. Dr. Wuehler described the statement as "rambling" and "expected from his disordered and contradictory thought process." Dr. Wuehler described defendant as having poor control over his thought process but no difficulty with controlling his behavior during the interview.

Dr. Wuehler diagnosed defendant as follows: "[r]ule [o]ut [s]chizophrenia, [p]aranoid [t]ype" and "[r]ule [o]ut [s]chizoaffective [d]isorder, [d]epressed [t]ype." Dr. Wuehler noted psychological stressors included defendant's chaotic lifestyle, homelessness, and his current criminal case. Dr. Wuehler assessed defendant as having current and recent major impairment to his functioning. Dr. Wuehler believed that defendant was in "need of antipsychotic medication, and possibly other psychiatric medication relative to his depressive process" and that he "may also need hospitalization."

Based on defendant's mental disorder, Dr. Wuehler said that defendant had poor judgment/insight and that "[a]ny decisions made at present regarding the present legal case would likely be fraught with distortion, as with the disorder in the thought process," explaining that defendant "would likely decide one minute on a plan or response and a few minutes later decide or indicate the opposite." Dr. Wuehler did not believe that defendant was malingering or attempting to distort information since "[h]is response pattern was the same regardless of whether he was being asked questions about his case, his history, or his mental status."

Defendant knew his defense counsel's name and the charge against him. He had read the police report but did not respond when asked whether the report was correct. He had a "basic understanding of his Miranda Rights, although his manner of explanation illustrated his odd thinking process." As an example, Dr. Wuehler noted that when asked about his right to speak with an attorney, defendant responded, " 'All my exclamatory statements will be brought.' " He knew the meaning of bail but did not know whether he had been released on bail or his own recognizance. He knew what plea bargaining meant. Defendant was able to describe the roles of the parties in the courtroom "with a basic understanding" but he gave a "very limited statement as to any understanding of adversarial relationship." When the doctor asked defendant to explain the meaning of incompetent to stand trial, defendant stated, " 'You don't have your wits.' " When the doctor asked defendant whether he thought he was presently incompetent, defendant stated, " 'I think right now . . . until I get my equilibrium . . . my meds . . . .' " Dr. Wuehler opined that defendant's response "illustrate[d] the wandering and uncertainty/confusion in the thought process.' "

Defendant responded negatively when asked whether he trusted his attorney and when asked why, he responded, " 'my PTSD' " but did not explain what he meant when asked. When asked whether his attorney would work against him, defendant "shook his head as if uncertain.' "

Dr. Wuehler concluded that although defendant had a basic understanding of the court process, "he also exhibited a psychotic disorder which negatively influenced his ability to reason, understand, [and] make decisions" and "did not appear presently able to function adequately in court."

The court found that defendant was incompetent to proceed, suspended the criminal proceedings, and ordered the conditional release program (program) to evaluate defendant and recommend a placement. In June 2012, the program reported that defendant had been released and had been instructed by defense counsel to contact the

5

program but did not. It made an appointment with defendant but he failed to attend and did not call. He also missed his mental health appointment. The program noted that defendant was "off his medication" and was "currently homeless." The program also noted that in 2009, defendant was found incompetent to stand trial and was sent to Napa State Hospital and upon release, he "did not follow through with his recommended treatment." The program concluded that defendant was not suitable for outpatient treatment "[d]ue to his inability to follow through with his court ordered appointments" and his lack of insight "into how to manage his mental illness while in the community." The program recommended a commitment to the trial competency program at Napa State Hospital pursuant to section 1370, subdivision (a)(2).

At the hearing on the program's report, defendant was out of custody and failed to appear. When he did appear more than four months later, defendant stated that the program came to its conclusion without interviewing him. The court referred the matter back to the program for an updated report and remanded defendant to custody with no bail so the program could interview him at the jail. Defendant wanted another competency hearing and the court responded that if the program believed that was an issue, it would raise it.

At the next hearing, both parties submitted on the June 2012 program report and the court committed defendant (as recommended) to the trial competency program setting three years as the maximum confinement time. The court then discussed with the parties a review date. Defendant asked to interject but the court advised defendant to speak with his attorney. Defendant stated, "Well, it's just about my character." Defense counsel commented, "It's not an issue at this time." Defendant replied, "If I'd known what this means that I desire mercy not sacrifice." The court thanked defendant and defendant added, "What I wanted to say was that as far as my request last August . . . ." The court interrupted, thanking defendant, and concluded the proceedings.

6

DISCUSSION

I

*This Appeal Is Not Moot*

An appeal is moot when the outcome of the appeal will have no effect. (See *Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 862-863; *In re Miranda* (2011) 191 Cal.App.4th 757, 762.) The People argue the issues have been rendered moot due to defendant's restoration to competency and the resumption of criminal proceedings during which defendant entered a plea and was granted probation.

However, the order here required a finding that defendant had a mental disorder. And the issue of defendant's mental competence in future proceedings may be based on prior incompetency findings. "Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (*People v. Rogers* (2006) 39 Cal.4th 826, 847, citing *Drope v. Missouri* (1975) 420 U.S. 162, 180 [43 L.Ed.2d 103, 118].)

Accordingly, because the finding that defendant was incompetent could impact future proceedings, defendant is entitled to challenge that finding and the issue is not moot. (See, e.g., *People v. Feagley* (1975) 14 Cal.3d 338, 345; *People v. Succop* (1967) 67 Cal.2d 785, 789-790; *People v. DeLong* (2002) 101 Cal.App.4th 482, 484 [defendant's drug possession conviction set aside after completing treatment program and probation conditions; appeal not rendered moot since defendant entitled to clear her name and stigma of criminality]; see also *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 228-230 [stigma attaches to a person found gravely disabled due to mental disorder]; *Conservatorship of Jones* (1989) 208 Cal.App.3d 292, 298 [collateral consequences remain "after the termination of a conservatorship (such as legal questions arising from the period of incapacity and potential social stigma) justify review" even though arguably moot]; *Conservatorship of Wilson* (1982) 137 Cal.App.3d 132, 136; 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Appeal, § 187, p. 472.)

7

The People rely on *People v. Lindsey*, *supra*, 20 Cal.App.3d at page 742, but that case is based on prior law and is inapposite. After *Lindsey* was decided, the decisions in *Jackson v. Indiana* (1972) 406 U.S. 715 [32 L.Ed.2d 435] and *In re Davis* (1973) 8 Cal.3d 798 issued and section 1367 was substantially amended. Unlike in *Lindsey*, the finding of incompetency in this case may have a future impact, and hence the appeal is not moot. We turn next to the merits.

II

*The Merits Of The Order And Right To Be Heard*

On the merits, we conclude sufficient evidence supported the trial court's finding that defendant was not competent to stand trial at the time the finding was made and we find no error in denying defendant an opportunity to speak at the hearing where he was represented by counsel.

Defendant contends insufficient evidence supported the finding that he was not mentally competent to stand trial. The People claim more than sufficient evidence supported the finding. We agree.

A defendant is presumed competent unless the contrary is proven by a preponderance of the evidence. (§ 1369, subd. (f).) In reviewing a finding of incompetency, we review " 'the record in the light most favorable to the verdict and uphold the verdict if supported by substantial evidence.' " (*People v. Blacksher* (2011) 52 Cal.4th 769, 797.)

Defendant complains Dr. Wuehler did not identify a mental disorder. We disagree. Dr. Wuehler, a licensed psychologist who had been recommended by defense counsel to evaluate defendant, said that defendant suffered from a psychotic disorder which was supported by the doctor's observations during his interview with defendant whose thought process was very disordered, who did not appear to register and instead responded to internal stimuli, who exhibited paranoid thought, who admitted hearing

8

voices when under stress, who claimed he had been diagnosed with schizophrenia, and who admitted having been seen at county mental health.

Defendant complains that there was no substantial evidence that he was unable to understand the nature of the proceedings. Again, we disagree. Dr. Wuehler noted although defendant had a basic understanding, he had an odd manner of explaining certain terms and rights and exhibited a psychotic disorder which affected his ability to understand and make decisions. He explained his right to speak with an attorney as "all my exclamatory statements will be brought." When he explained incompetent to stand trial, he said "[y]ou don't have your wits." And when asked if he was incompetent, he responded, " 'I think right now . . . until I get my equilibrium . . . my meds . . . .' " In addition, defendant did not register, had poor insight and judgment, and heard voices during the interview.

Defendant also complains that there was insufficient evidence that he could not assist his attorney in his defense. We reject this claim as well. Defendant stated that he did not trust his attorney because of his "PTSD" without explaining what he meant. And he was uncertain if his attorney would work against him. Given his paranoid thoughts, it was unlikely he could assist his attorney. Substantial evidence supported the trial court's finding that defendant was not competent to stand trial.

With respect to the court's denial of defendant's request to be heard about his "character" *after the court had found defendant incompetent and had committed him to Napa State Hospital* and set the maximum term, we find no error.

Defendant was represented by counsel. When defendant asked whether he could say something, the court told him to tell his attorney who would advise the court. Defense counsel responded "[i]t's not an issue at this time." In arguing the court erred, defendant relies on *People v. Harris* (1993) 14 Cal.App.4th 984, 993-994 which is inapposite as it related to a defendant's right to testify at a competency hearing. In the instant case, the proceedings had been concluded and a decision on placement had been

9

made before the defendant asked to speak.  The proceeding had effectively concluded. "Diligent advocacy does not require an attorney to blindly follow every desire of his client."  (*People v. Bolden* (1979) 99 Cal.App.3d 375, 379.)  There was no error.

DISPOSITION

The order (finding of incompetency) is affirmed.


          ROBIE          , J.


We concur:


      RAYE          , P. J.


      MAURO        , J.

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C073061 |
| Plaintiff and Respondent, | (Super. Ct. No. CM035627) |
| v. | ORDER CERTIFYING OPINION FOR PARTIAL |
| RUDY FRANCISCO DE LA ROSA, | PUBLICATION AND DENYING THE USE OF |
| Defendant and Appellant. | INITIALS IN PLACE OF APPELLANT'S NAME |

THE COURT:

The opinion in the above-entitled matter filed September 8, 2014, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of the Factual and Procedural History and part II of the Discussion.

1

Appellant's request for the use of initials in place of appellant's name is denied.

BY THE COURT:

        RAYE               , P. J.

        ROBIE             , J.

        MAURO          , J.

APPEAL from an order (finding of incompetency) of the Superior Court of Butte County, Clare Keithley, Judge.  Affirmed.

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputies Attorney General, for Plaintiff and Respondent.