Filed 1/5/21  Conservatorship of T.M.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Conservatorship of the Person of T.M. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY, <br><br> Petitioner and Respondent, <br><br> v. <br><br> T.M., <br><br> Objector and Appellant. | A158986 <br><br> (Contra Costa County Super. Ct. No. MSP1400841) |

T.M., a 43-year-old woman who suffers from schizophrenia, appeals from an order of November 8, 2019, reappointing the Public Guardian of Contra Costa County as conservator of her person under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.)[1] effective October 8, 2019, for the sixth consecutive year.  Because the order appealed from expired even before briefing was complete in the appeal, and because T.M. raises only an insufficiency of the evidence issue, we shall dismiss the appeal as moot.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

# I. BACKGROUND

On September 5, 2019, the Public Guardian filed a petition to be reappointed as conservator of T.M.'s person for the sixth year in a row, including the opinions of two psychiatrists that she was gravely disabled as a result of mental illness. (§§ 5350, 5361.) T.M. initially had been conserved when the Public Guardian was appointed as her temporary conservator in June 2014 and conservator for the ensuing year in October 2014. The Public Guardian has been continuously reappointed in every year since. (§ 5361.)

Whether a conservatorship under the LPS Act may be established or renewed turns on whether the conservatee is "gravely disabled" as a result of a mental disorder. (§§ 5350, 5361.) "Grave disability" is defined as a "condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A).) The Public Guardian must prove beyond a reasonable doubt that the proposed conservatee is gravely disabled. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235.) The testimony of one witness may be sufficient to support such a finding. (*Conservatorship of Jesse G.* (2016) 248 Cal.App.4th 453, 461.)

At trial on the reappointment petition, the Public Guardian's case consisted of the testimony of Dr. Michael Levin and the testimony of T.M. herself. The testimony showed that T.M. was diagnosed with mental disorders beginning about age 25. Dr. Levin, testifying as an expert witness in psychiatry and grave disability, gave her a differential present diagnosis of schizophrenia or schizoaffective disorder.

Though she was earlier housed in a state hospital, about six or eight months before the trial, she was moved to Villa Fairmont in San Leandro, also a locked facility but one with fewer restrictions. We are informed T.M.

2

has now been moved to Pathways, a less restrictive, unsecured facility, apparently as a result of a court order filed November 8, 2019, by Judge Susanne Fenstermacher, whose "grave disability" finding is here on appeal.[2]

T.M.'s illness renders her subject to delusions and audio hallucinations. She does not believe she is schizophrenic, but rather attributes her symptoms to being clairvoyant and able to predict the future. She claims she can hear her son on the phone before he calls her, and that she can hear his voice and the voices of other people without a phone. She believes former President Barack Obama is her father.

Regardless of whether she calls it schizophrenia or clairvoyance, she knows that she must follow a complicated health regimen. She was able at trial to name her medications: atenolol, atropine, magnesium, clozapine (Clozaril), Depakote (a mood stabilizer), Prozac, Ativan, Protonix, Neurolax, sertraline, and DSS. At Villa Fairmont, T.M.'s medications were administered by the facility's staff. They told her when it was time to take her various medications, they dispensed the proper dosage, and she would line up with the other patients to receive her pills three times a day. A nurse watched to make sure she swallowed her pills. She was medication-compliant for at least the two months prior to the hearing. She promised she would take her medications if allowed to live on her own.

T.M. testified she could care for herself by arranging an Uber ride, calling a taxi, or taking public transit to a shelter initially, and then she

---

[2] The Public Guardian filed a request for judicial notice in this court and a request to take evidence on appeal, seeking to augment the record with the Public Guardian's petition for reappointment filed August 27, 2020, and additional court minute orders showing the renewed petition was set for court trial on November 10, 2020. We granted the Public Guardian's motion in its entirety.

would contact her family for support.[3]  She testified she had lived on her own in an apartment in Rodeo for seven years, paying rent with social security income, before her conservatorship was established.[4]  She also claimed she could get a job working at Nike or at the radio station, 99.1.

T.M. planned to have her medications and groceries delivered to her. She also understood she needed to have her blood tested monthly, and she planned to go to the El Portal Clinic (in San Pablo) to get tested.  She testified the clinic would also help her budget her money for food and would take her shopping for clothes.

At the end of her testimony, T.M. read a letter she had written to the judge.  In it, she insisted she was "very capable of managing on [her] own," she repeated many of her ideas about how she could cope on her own, and reasserted her desire to live independently in Rodeo or with her family.

Dr. Levin opined that T.M. suffers from schizophrenia, and though her condition has improved due to medication, she remained at that point in time gravely disabled due to her mental illness.  His reasons were: (1) she has a major mental illness and is in denial about her mental illness; (2) she has a complicated medical regimen and has always relied on help for compliance; and (3) she has not yet had an opportunity to demonstrate independent

_____

[3] T.M.'s mother lived in Pittsburg, California through much of the time T.M. was conserved, but by 2019 she lived in Louisiana.  T.M. had a sister and a son who may have lived locally, but their addresses were unknown.  At one time she had a grandfather who may have lived locally, but his address was unknown.  None of her relatives had filed statements with the court indicating a willingness to help provide food, shelter or clothing to T.M.  (See § 5250, subd. (d)(2) [relative must provide written consent to help conservatee].)

[4] The record shows, however, that between 2003 and 2013 she had frequent need of mental health services, often for crisis intervention.

4

functioning and her plans for housing and the future were "vague and unformed." He also testified that she needed regular supervision in administering her psychotropic medications and a psychiatrist overseeing her medication regimen.

As Dr. Levin pointed out, Clozaril, an atypical antipsychotic medication, must be closely monitored for effectiveness and side effects, including changes to the patient's white blood cell count. In order to maintain her Clozaril prescription, T.M. was required to have a complete blood count every month to monitor her white blood cell count. Dr. Levin confirmed that the El Portal Clinic would test her blood, as T.M. testified, but he emphasized that the drug requires a "complicated protocol that requires coordination and attention to detail," and collaboration with a lab and a pharmacy. T.M. had worked with the staff and doctors at El Portal Clinic previously and testified they had helped her comply with medication requirements before by visiting her daily to remind her to take her medications. But Dr. Levin questioned whether T.M. would be "organized enough, structured enough, [to be] able to make the arrangements" and pointed out that if she were to fail to take the medication, it might mean restarting the drug and retitrating the dosage.[5]

---

[5] "[I]f a conservatee is not presently gravely disabled, an LPS conservatorship could not be extended because of a perceived likelihood of future relapse." (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577.) If a conservatee will not or cannot take her medication without supervision, and a mental disorder makes her unable to provide for her food, clothing, or shelter without such medication, then the trier of fact may find her gravely disabled. (*Conservatorship of Guerrero* (1999) 69 Cal.App.4th 442, 445–447; 2 CACI No. 4002.)

5

At the conclusion of the hearing, Judge Fenstermacher[6] found T.M. had "made tremendous progress in her current placement. She's medication compliant. She participates in groups. She takes care of her own ADL's [activities of daily living], and she conducts herself appropriately . . . both in the facility and under passes." The court found by clear and convincing evidence that T.M.'s residence at Villa Fairmont was unnecessarily restrictive and that the "least restrictive and most appropriate" placement for her would be in an unlocked board and care facility.

The judge nevertheless found T.M. remained gravely disabled and granted the Public Guardian's reappointment petition for another year. She also found, based on clear and convincing evidence, that T.M. lacked capacity to exercise her right to refuse or consent to treatment related specifically to her being gravely disabled, including psychotropic medications, and the court restricted her rights in that regard, over the objection of T.M.'s attorney. (§ 5357.) Finally, the judge ordered T.M. not to own a firearm or any other deadly weapon through the course of her renewed conservatorship. The order reappointing the Public Guardian as T.M.'s conservator, along with letters of conservatorship were filed November 8, 2019.

## II. DISCUSSION

The sole issue raised in this appeal is that the evidence is insufficient to support the trial court's finding that T.M. was gravely disabled. T.M. argues there was no substantial evidence to support the disputed finding.

---

[6] Judge Fenstermacher had a long familiarity with T.M.'s case, having been the judge to first order her subject to a year-long conservatorship in 2014 and a petition for rehearing in 2015. Judge Fenstermacher also reappointed the Public Guardian as conservator in October 2018 and presided over proceedings resulting in T.M.'s move to Villa Fairmont.

6

An LPS conservatorship appointment or reappointment order lasts for one year only, by operation of law. (§ 5361; cf. Prob. Code, § 1860 [Probate Code conservatorship lasts until court terminates it or conservatee dies].) The order here under review expired on October 7, 2020. At that point the appeal became moot. "If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot." (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 144.)

The opening brief in this appeal was filed July 29, 2020; on August 27, 2020, the Public Guardian filed a petition to be reappointed as T.M.'s conservator (§ 5361); the responding brief in this appeal was filed on October 26, 2020; a trial was scheduled to be held on the Public Guardian's reappointment petition on November 10, 2020, and the reply brief was filed in this appeal on November 16, 2020.

The Public Guardian now asks us to dismiss the appeal on grounds that it is moot. The Public Guardian argues the only relief this court could grant would result in a new trial, when such a trial has already been conducted on November 10, 2020, on the renewed petition or soon will be.[7] We agree that the appeal is now moot.

In general, it is a court's duty to decide " ' "actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) When, during the pendency of an LPS conservatorship appeal, through

---

[7] The parties have not informed us of the outcome of the November 10, 2020 trial in briefing, if in fact trial went forward as scheduled.

7

no fault of the proposed conservator, an event occurs such that the appellate court cannot grant any effectual relief, the appeal becomes moot and should ordinarily be dismissed. (*Conservatorship of J.Y.* (2020) 49 Cal.App.5th 220, 223, 225, review granted Aug. 19, 2020, S263044; see *People v. Alsafar* (2017) 8 Cal.App.5th 880, 882–883 [Mentally Disordered Offender]; *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 960 (*Joseph W.*) [but exercising discretion to address important issue likely to evade review].)

There are three discretionary exceptions to the rule against adjudicating moot claims. "A court ordinarily will dismiss an appeal when it cannot grant effective relief, but may instead 'exercise its inherent discretion to resolve an issue when [1] there remain "material questions for the court's determination" [citation], [2] where a "pending case poses an issue of broad public interest that is likely to recur" [citation], or [3] where "there is a likelihood of recurrence of the controversy between the same parties or others." ' " (*In re David B.* (2017) 12 Cal.App.5th 633, 644 (*David B.*) [juvenile dependency appeal].)

The first and second *David B.* exceptions are not at issue here. The only issue T.M. raises on the merits is insufficiency of the evidence. That is not a matter of widespread interest, but rather a fact-intensive inquiry into T.M.'s individual mental health status. As such, it does not fall within the second broad public interest exception to the mootness doctrine identified in *David B.*, *supra*, 12 Cal.App.5th at page 644.

But T.M. argues the issue on appeal need not be one of general or widespread interest, so long as it is likely to recur between the parties. (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 133 (*Carol K.*).) She points out that probable future repetition of an issue that is likely to evade review is a basis to overlook mootness and address the merits, even when the

future cases affected would likely be only similar petitions between these two parties. Citing *Carol K.*, T.M. suggests the mootness doctrine should not apply because the issues raised are capable of repetition and, due to the short duration of the order reappointing the Public Guardian and the normal time required to obtain relief on appeal, the errors would tend to evade review unless we address them here. She invokes, in essence, *David B.*'s third exception to mootness. (*David B.*, *supra*, 12 Cal.App.5th at p. 644.)

We find T.M.'s argument unavailing. Even if the issue of T.M.'s grave disability arises in the future between T.M. and the Public Guardian, no future case will be affected by the sufficiency of the evidence in the hearing on October 29, 2019. In those future reappointment proceedings the Public Guardian will be required to prove grave disability anew. (§ 5361.) Each future case will have its own record to review, and our review of the sufficiency of the evidence now for a trial that occurred in 2019 would have no bearing on a future grave disability finding. "Despite the nuanced variation in [the] articulations of when an appellate court may proceed to decide an otherwise moot appeal, the common thread running through the cases is that doing so is appropriate *only* if a ruling on the merits will *affect* future proceedings between the parties or will have some *precedential consequence* in future litigation generally." (*David B.*, *supra*, 12 Cal.App.5th at p. 654, italics added.)

On whether the issue is one likely to evade review, we cannot accept an argument that LPS one-year appointment orders are inevitably destined to be mooted out before they expire, so that appellate review becomes effectively unavailable. (Cf. *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1014–1015 [appeal involving 180-day involuntary treatment order was subject to mootness exception because it raised a "significant question"

9

tending to evade review].)  Here, through no fault of the parties, there was a long delay in preparing the record.[8]  In the absence of such delays, we will not assume it is unduly difficult to get a disposition on appeal before the one-year conservatorship expires.  (See *Conservatorship of Forsythe* (1987) 192 Cal.App.3d 1406, 1409 [adopting policy to entertain such cases on "expedited appeal"]; California Rules of Court, rule 8.240 [motion for calendar preference].)  Moreover, we do not believe "tend[ing] to evade review" is enough to justify exercise of our discretion where the resolution of the moot appeal will have no impact on future cases.  (*David B.*, *supra*, 12 Cal.App.5th at pp. 653–654.)

T.M. relies almost exclusively on *Carol K.*, *supra*, 188 Cal.App.4th 123 for the proposition that conservatorship appeals need not be dismissed as moot if the issues on appeal could arise in future disputes between the parties.  *Carol K.* involved not simply an issue of insufficiency of the evidence, but also an issue about the correct interpretation of the LPS Act and the showing required for a grave disability finding.  (*Carol K.*, at pp. 136–137.)  In *Carol K.*, the error of law, if not addressed in the moot appeal, would be subject to repetition in future conservatorship proceedings.  (*Id.* at pp. 133, 136–137; see *Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 546–548 [guardian's appeal raising issue of correctness of jury instruction and other legal issues was not moot].)  Likewise, in *Joseph W.*, the court of appeal overlooked that the appeal was moot and exercised its discretion to hear an

---

[8] A notice of appeal was filed October 31, 2019 (California Rules of Court, rule 8.104(d)(2)), but completion of the record was delayed until May 8, 2020, allegedly due to understaffing at the superior court and delays occasioned by the coronavirus pandemic.  Though a request for expedited preparation of the record could have been made, this appears to explain the delay in the submission of briefs.

appeal raising an issue of statutory interpretation relating to the conservatee's right to a jury trial.  (199 Cal.App.4th at p. 960.)  The alleged error in *Carol K.*, *Baber*, and *Joseph W.*, if established in the moot appeal, could likely prevent repetition of the same error in a future hearing between the parties on a reappointment petition.

The same is not true where, as here, the only issue on appeal is insufficiency of the evidence of grave disability.  In such cases, the issue is not one the resolution of which will eliminate future error or future prejudice.  Each annual appointment is a separate proceeding; a decision about the sufficiency of the evidence in one trial for reappointment will not affect the outcome in a later trial for reappointment of a conservator, even if the hearings both involve the same conservatee.  Thus, we recognized long ago that an expired trial court order is "technically moot," but subject to an exception to the doctrine if the issue raised in the underlying appeal is an important one and likely to recur.  (*North Bay Regional Center v. Sherry S.* (1989) 207 Cal.App.3d 449, 454; accord, *People v. Quinn* (2001) 86 Cal.App.4th 1290, 1293.)

It is true that appellate courts have frequently overlooked mootness and addressed an appeal from an expired conservatorship order on the merits.  (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 161, fn. 2 [mootness argument is "uniformly raised, and uniformly rejected"]; e.g., *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5 [finding exception to mootness where important issue raised was "capable of recurring, yet of evading review"]; cf. *Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1088, fn. 1 ["not moot"].)  The two circumstances in which this is proper are:  (1) when the appeal raises significant legal issues, the determination of which will affect other cases, or (2) when there is a

11

likelihood of recurrence of the issues in future litigation between the parties, the resolution of which will likely affect future proceedings between them.

This appeal is moot because the order from which T.M. appeals has terminated, and the appeal raises only a sufficiency of the evidence claim. Any error identified by us on appeal would have no bearing on the determination of grave disability in a later proceeding. T.M.'s mental condition is changeable and any later petition for reappointment of a conservator would have to be based upon facts present at the time of trial on the new petition. (§ 5361.)

The reestablishment of an LPS conservatorship is not a continuation of earlier proceedings, nor can the trial court rely on earlier findings to establish a subsequent conservatorship. (Cf. *People v. J.S.* (2014) 229 Cal.App.4th 163, 169–170 [determining Mentally Disordered Offender status requires some findings that must be proven every year, and some that are "static"].) Rather, the petition to reestablish a conservatorship is a new and independent proceeding at which the proposed conservator must establish that the conservatee remains *presently* gravely disabled. (§ 5361; *Conservatorship of Murphy* (1982) 134 Cal.App.3d 15, 18–19; *Conservatorship of Benvenuto* (1986) 180 Cal.App.3d 1030, 1034; *Conservatorship of Walker*, *supra*, 206 Cal.App.3d at p. 1577.) That is, each subsequent petition for reappointment of an LPS conservator is resolved as a stand-alone determination, independently of any LPS conservatorship that preceded it. (See § 5361; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 543 ["focus [is] primarily on the conservatee's current needs and progress, rather than on a retrospective consideration of conditions that may no longer exist"].)

We are aware of no "collateral consequences" of a finding of grave disability, such as might be the case if such a finding could subsequently be

12

used to some adverse purpose. (See *People v. DeLeon* (2017) 3 Cal.5th 640, 645–646; *Conservatorship of Wilson* (1982) 137 Cal.App.3d 132, 136.) If T.M. is relieved of her conservatorship, and the Public Guardian later wants to petition for conservatorship again, no presumption arises on the basis of her prior conservatorship. (§ 5368.) And though *Carol K.* suggests the stigma attached to a grave disability finding could support an exception to mootness (188 Cal.App.4th at p. 133; accord, *Wilson*, at p. 136), we question how much stigma actually attaches to an individual grave disability finding that was the sixth in a series of such findings.

Finally, T.M. is not entirely without a remedy if she remains under a conservatorship. Indeed, the LPS Act provides the conservatee with a "panoply of safeguards." (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at p. 543.) "At any time, the conservatee may petition the superior court for a rehearing as to his [or her] status as a conservatee." (§ 5364.) After six months, she may petition again for a rehearing. (*Ibid*.) The conservatee also has that right to contest the terms of a commitment and any rights denied him or her (§ 5358.3), and a right to the least restrictive placement option (§ 5358, subd. (a)(1)(A)). Of course, she may appeal if letters of conservatorship issue as a result of the 2020 petition for reappointment (Prob. Code, § 1301, subd. (a)), and she may request calendar preference (California Rules of Court, rule 8.240). If she could show " 'unreasonable consequences' " would ensue "because of the limitations of the statutory review mechanisms," she would also be entitled to writ relief. (*In re Gandolfo* (1984) 36 Cal.3d 889, 898.)

13

## III. DISPOSITION

The appeal is dismissed as moot.  The parties to bear their own costs on appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.